ESTATE OF FINLEY et al., Appellees,

v.

CLEVELAND METROPARKS et al., Appellants.

[Cite as *Estate of Finley v. Cleveland Metroparks,*
189 Ohio App.3d 139, 2010-Ohio-4013.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 94021 and 94069.

Decided Aug. 26, 2010.

Robert A. Pecchio, for appellees.

Janik L.L.P., Steven G. Janik, and Audrey K. Bentz, for appellant Cleveland Metroparks.

Weston Hurd, L.L.P., Hilary S. Taylor, Shawn W. Maestle, and Julius Trombetto, for appellant the city of Brecksville.

LARRY A. JONES, Judge.

{¶ 1} Defendants-appellants, the city of Brecksville ("the city") and the Cleveland Metroparks and others ("the Metroparks"), appeal the trial court's denial of their motions for summary judgment. Finding merit to the appeal, we reverse the decision of the trial court.

{¶ 2} This appeal arises from a lawsuit filed by plaintiffs-appellees, the estate of Sally Finley and Patrick Finley (collectively, "the Finleys"), against the city and the Metroparks, alleging that the city and the Metroparks were negligent in maintaining roads and premises and that their negligence resulted in Sally's death and injuries to Patrick.

{¶ 3} In August 2005, Patrick was driving his motorcycle with his wife on Riverview Road through the Metroparks in Brecksville. As the Finleys were traveling down Riverview, a tree fell into the roadway, and the motorcycle struck the tree. Patrick was injured, and Sally died as a result of her injuries.

{¶ 4} In 2007, the Finleys filed suit against the Metroparks. In 2008, the Finleys moved to amend their complaint to add the city as a new party defendant pursuant to Civ.R. 15(C). The trial court granted the motion. In 2009, the city and the Metroparks separately moved for summary judgment, arguing that they were entitled to immunity as political subdivisions. The trial court granted the motion for summary judgment in favor of the city as to the Finleys' claim for punitive damages, but denied the motions for summary judgment as to the claims for immunity, finding that neither the city nor the Metroparks were immune from liability.

{¶ 5} The city and the Metroparks filed separate notices of appeal.[1] We have consolidated the two appeals for hearing and disposition.

---

1. Because this appeal involves an issue of governmental immunity, the denial of the city's motion for summary judgment constitutes a final, appealable order. See R.C. 2744.02(C); *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878.

{¶ 6} In its appeal, the city raises the following three assignments of error for our review:

I.   The trial court erred in holding plaintiff[s]-appellees' claims against defendant-appellant the City of Brecksville were not barred by the applicable statute of limitations set forth in R.C. 2744.04(A).

II.   The trial court erred in holding that defendant-appellant the City of Brecksville was not immune from liability pursuant to Revised Code Chapter 2744.

III.   The trial court erred in holding that defendant-appellant the City of Brecksville was not immune from liability pursuant to the recreational user statute, R.C. 1533.181(A)(1).

{¶ 7} The Metroparks raise the following two assignments of error for our review:

I.   The trial court erred in denying the Cleveland Metroparks' motion for summary judgment because the Cleveland Metroparks is entitled to political subdivision immunity.

II.   The trial court erred denying the Cleveland Metroparks' motion for summary judgment because the Cleveland Metroparks is entitled to immunity under the recreational user statute.

### Statute of Limitations

{¶ 8} As an initial matter, we will discuss whether the trial court erred in denying the city's motion for summary judgment.  Based on the following analysis of pertinent law and facts, we find that the trial court erred and that the Finleys' claims against the city are time-barred.

{¶ 9} In this case, R.C. 2744.04 is the applicable statute of limitations that governs actions against political subdivisions.  It states as follows:

{¶ 10} "(A) An action against a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, whether brought as an original action, cross-claim, counterclaim, third-party claim, or claim for subrogation, shall be brought within two years after the cause of action accrues, or within any applicable shorter period of time for bringing the action provided by the Revised Code. This division applies to actions brought against political subdivisions by all persons, governmental entities, and the state."

{¶ 11} The accident that injured Patrick and killed Sally occurred on August 1, 2005.  The Finleys filed their complaint against the Metroparks on July 22, 2007. The Finleys then moved to amend their complaint and add the city as a defendant

on August 21, 2008, more than three years after the accident occurred and more than one year after the statute of limitations against the city had expired.

{¶ 12} The Finleys argued to the trial court that pursuant to Civ.R. 15(C), they should be allowed to add the city to the complaint because they did not know that the tree might be located on city property until after reading the Metroparks' motion for summary judgment in April 2008. The trial court granted the motion to amend the complaint and denied the city's subsequent motion to dismiss and motion for summary judgment.

{¶ 13} Civ.R. 15(C) provides as follows:

{¶ 14} "Relation back of amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

{¶ 15} Civ.R. 15(C) sets forth three requirements that must be met before an amendment "changing the party" can relate back to the original pleading. First, the claim in the amended complaint must arise "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Second, the party sought to be substituted by the amendment must have received notice of the action "within the period provided by law for commencing the action," so that the party is not prejudiced in maintaining a defense. Third, the new party, "within the period provided by law for commencing the action," knew or should have known that, but for a mistake concerning the proper party's identity, the action would have been brought against the new party.

{¶ 16} The primary purpose of Civ.R. 15(C) is to preserve actions that, through mistaken identity or misnomer, have been filed against the wrong person. *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 101, 529 N.E.2d 449. The decision whether to allow an amendment to relate back under Civ.R. 15(C) lies within the discretion of the trial court. *Patterson v. V & M Auto Body* (1992), 63 Ohio St.3d 573, 576, 589 N.E.2d 1306. In this case, we find that the trial court abused its discretion in allowing the amendment to add the city as a new party defendant.

{¶ 17} The city argued that the Finleys filed their amended complaint, which added the city as a party, after the applicable statute of limitations had expired and that the amended complaint should not relate back to the date of the filing of the original complaint. The Finleys responded by arguing that Civ.R. 15(C) can be used to add new parties to an action even after the applicable statute of limitations expires.

{¶ 18} In 1994, the Ohio Supreme Court clarified that Civ.R. 15(C) may not be used to add a party to a cause of action. *Kraly v. Vannewkirk* (1994), 69 Ohio St.3d 627, 635 N.E.2d 323. In *Bykova v. Szucs,* Cuyahoga App. No. 87629, 2006-Ohio-6424, 2006 WL 3517958, we noted that historical case law and "[a] review of Civ.R. 15(C) suggests that it is limited to an amended pleading changing the party against whom a claim is asserted." Id. at ¶ 4. Civ.R. 15(C) does not allow for the adding of a new party to an original action under the relation-back doctrine after the statute of limitations has expired. *Bykova.* "When a new party is added, a new cause of action is created and will not relate back to the date of filing the original action for statute of limitations purposes." Id. at ¶ 4.

{¶ 19} Although some courts have allowed substitution of a party after the applicable statute of limitations has expired, it is only when the design is to substitute a party to correct a misnomer or to resolve minor errors. *State Farm Mut. Auto. Ins. Co. v. Sandhu Auto Mechanic, Inc.* (Oct. 16, 1986), Cuyahoga App. No. 51218, 1986 WL 11655. The common misnomer case is concerned with substituting a middle initial or substituting "incorporation" in place of "company." Id.

{¶ 20} Recently, we reiterated that Civ.R. 15(C) may not be used to add a new party to a case. In *Roche v. On Time Delivery Servs. Inc.,* Cuyahoga App. No. 94036, 2010-Ohio-2358, 2010 WL 2136656, the plaintiff appealed the trial court's denial of his motion to amend his pleading to change the name of the defendant from On Time Delivery Services to On Time Delivery and to add the administrator of the Ohio Bureau of Workers' Compensation as a new-party defendant. While we found that the trial court erred in disallowing Roche to amend his complaint to rename the delivery company, we upheld the court's decision to deny Roche the opportunity to add the administrator to the suit. We noted that "[w]hen courts state that 'a new party' cannot be added, they do not mean that the original party cannot be substituted with a new party." Id. at ¶ 31. " 'Civ.R. 15(C) may be employed to substitute a party named in the amended pleading for a party named in the original pleading to permit the amended pleading to relate back to the date of the original pleading, provided the requirements of the rule are otherwise satisfied. * * * However, the rule may not be employed to assert a claim against an additional party while retaining a party against whom a claim was asserted in the original pleading.' " Id., quoting *Kraly,* 69 Ohio St.3d 627,

635 N.E.2d 323, paragraph one of the syllabus. Thus, pursuant to *Kraly*, a court may substitute an incorrectly named defendant with the correct one, but may not allow an additional party into the action. Id.

{¶ 21} Likewise, in this case, the trial court should have prohibited the Finleys from adding the city to the case pursuant to Civ.R. 15(C). The Finleys were not substituting the city for the Metroparks as part of a minor error; instead, the Finleys were adding the city as a new party defendant while retaining their cause of action against the Metroparks. Civ.R. 15 does not allow such an addition.

{¶ 22} Since the applicable statute of limitations had expired, the Finleys are estopped from bringing suit against the city. The Finleys' argument that they did not know until 2008 that they should bring suit against the city does not change the fact that the applicable statute of limitations had expired.

{¶ 23} Therefore, the city's first assignment of error is sustained. Because we find that the trial court incorrectly denied the city's motion for summary judgment based on the applicable statute of limitations, the city's remaining assignments of error are moot. See App.R. 12.

## Metroparks' Motion for Summary Judgment

{¶ 24} We next consider whether the trial court erred in denying the Metroparks' motions for summary judgment based on political-subdivision immunity and recreational immunity.

## Standard of Review

{¶ 25} Appellate review of summary judgment is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241; *Zemcik v. LaPine Truck Sales & Equip. Co.* (1998), 124 Ohio App.3d 581, 585, 706 N.E.2d 860. The Ohio Supreme Court set forth the appropriate test in *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264, 273–274.

{¶ 26} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the

party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

### Political Subdivision Immunity

{¶ 27} In their first assignment of error, the Metroparks argue that the trial court erred when it denied its motion for summary judgment in finding that the park system was not immune from liability. For the following reasons, we agree.

{¶ 28} The Political Subdivision Tort Liability Act, as codified in R.C. Chapter 2744, sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability. First, R.C. 2744.02(A) states the general rule of immunity that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function.[2] See also *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7. However, the immunity afforded in R.C. 2744.02(A)(1) is not absolute. See R.C. 2744.02(B).

{¶ 29} "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability." *Colbert* at ¶ 8. "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." Id. at ¶ 9; see also *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 697 N.E.2d 610.

{¶ 30} The Cleveland Metroparks is a political subdivision of the state of Ohio. *Wolanin v. Holmes*, Cuyahoga App. No. 88454, 2007-Ohio-3410, 2007 WL 1934372, citing *Willoughby Hills v. Bd. of Park Commrs.* (1965), 3 Ohio St.2d 49, 32 O.O.2d 27, 209 N.E.2d 162. Therefore, the general grant of immunity in R.C. 2744.02(A)(1) applies in the instant case. This immunity will preclude liability in this case unless the Finleys can show that an exception under R.C. 2744.02(B) applies.

### Exceptions to Political Subdivision Immunity

{¶ 31} Under the second tier of the analysis, the Metroparks may be liable if one of the following exceptions under R.C. 2744.02(B) applies: (1) the

---

2. For purposes of immunity under R.C. Chapter 2744, "governmental function" is defined by R.C. 2744.01(C), and "proprietary function" is defined by R.C. 2744.01(G).

negligent operation of a motor vehicle by an employee, (2) the negligent performance of acts by an employee with respect to a proprietary function, (3) the negligent failure to keep public roads in repair and open, (4) the negligence of employees occurring within or on the grounds of buildings used in connection with the performance of governmental functions, or (5) when civil liability is expressly imposed upon the political subdivision by statute. Id. at (B)(1) through (5).

{¶ 32} The Finleys argue that R.C. 2744.02(B)(3) applies to this case so as to strip the Metroparks of any immunity. The Metroparks responded that the tree in question was not located on Metroparks property but was located on city property; therefore, the Metroparks cannot be found negligent under R.C. 2744.02(B)(3) for failing to maintain a tree located on the city's property.

{¶ 33} From our review of the lower court record, we note the ongoing debate about whether the tree that fell was located on Metroparks property or city property.[3] In fact, the trial court noted in its decision that the ownership of the tree raised a genuine issue of material fact precluding summary judgment. Our review of the evidence presented in this case shows that the overwhelming evidence supports the Metroparks' assertion that the tree was located on the city's property. Moreover, during oral argument, the city conceded that the tree base (root system) was contained within its right of way and thus was on city property. That being said, for purposes of our current analysis, it does not matter on whose property the tree was located. Clearly, if the tree was located on city property, the Metroparks would have no duty to maintain the tree. But even if the tree was located on the Metroparks' property, the park system is still immune from liability.

{¶ 34} R.C. 2744.02(B)(3) states as follows:

{¶ 35} "Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge."

{¶ 36} The current version of R.C. 2744.02(B)(3) was amended in part by Senate Bill 106 ("S.B. 106"), effective April 2003. Prior to that date, R.C. 2744.02(B)(3) read, "[P]olitical subdivisions are liable for injury, death, or loss to person or property caused by their failure to keep public roads, highways,

---

3. The parties agree that Riverview Road is the city's property.

streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance * * *." See 149 Ohio Laws, Part II, 3500, 3508.

{¶ 37} Under the prior version of R.C. 2744.02(B)(3), a political subdivision must have had either actual or constructive knowledge of the nuisance in question before liability could be imposed. *Harp v. Cleveland Hts.* (2000), 87 Ohio St.3d 506, 509, 721 N.E.2d 1020, citing *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 97, 566 N.E.2d 154; see also *Tomlin v. Pleban,* Cuyahoga App. No. 87699, 2006-Ohio-6589, 2006 WL 3635173. "There is constructive knowledge if 'such nuisance existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger.'" *Harp* at 512, 721 N.E.2d 1020, quoting *Beebe v. Toledo* (1958), 168 Ohio St. 203, 207, 6 O.O.2d 1, 151 N.E.2d 738. In addition, this court has refused to infer that there is constructive notice from failure to inspect when a political subdivision had no notice of its defective condition. *Head v. Brooks* (Dec. 13, 2001), Cuyahoga App. No. 78411, 2001 WL 1612097.

{¶ 38} The Finleys argue that their tree expert opined that the tree had been decaying for five to ten years before it fell and the tree would have been noticeably dead when it fell. Therefore, the Finleys argue, the Metroparks should have been on constructive notice that the tree posed a hazard. But in *Howard v. Miami Twp. Fire Div.,* 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 30, the Ohio Supreme Court found that for purposes of R.C. 2744.02(B)(3), as amended by the state legislature in 2003, "an 'obstruction' must be an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or *that may have the potential to do so."* (Emphasis added.)

{¶ 39} To illustrate the change in law, the court cited its decision in *Harp,* 87 Ohio St.3d 506, 512, 721 N.E.2d 1020, where it held that "a defective tree limb threatening to fall on a public roadway, but not actually on the roadway, could constitute a nuisance under R.C. 2744.02(B)(3) and that a political subdivision's duty of care extended beyond merely removing obstructions from public roads." *Howard* at ¶ 28. In *Howard,* the court noted that the state legislature, in amending R.C. 2744.02(B)(3), "used the word 'obstructions' in a deliberate effort to impose a condition more demanding than a showing of a 'nuisance' in order for a plaintiff to establish an exception to immunity." Id. at ¶ 29. Therefore, in *Howard,* the court made it clear that had it analyzed *Harp* under the amended statute, it would find the city immune from liability. See *Laurie v. Cleveland,* Cuyahoga App. No. 91665, 2009-Ohio-869, 2009 WL 483175.

{¶ 40} We also find that the cases on which the Finleys rely are easily distinguishable from the case at bar. In *Richards v. Rubicon Mill Condominium Assn.* (1995), 100 Ohio App.3d 264, 653 N.E.2d 751, the court reversed a trial court's granting of a Civ.R.12(B)(6) dismissal in a case in which a tree fell on a car and killed the driver. In *Richards,* the court found that the allegations in the complaint were sufficient to state a claim upon which relief may be granted, not whether the case could withstand a summary-judgment motion. Id. *Richards* was also decided prior to the amendment of R.C. 2744.02(B)(3). In *James v. Cincinnati,* Hamilton App. No. C–070367, 2008-Ohio-2708, 2008 WL 2312637, the court found that immunity was unavailable to a city defendant when a wooden utility pole in a park fell and injured two men. But in *James,* the court found that the plaintiff had presented evidence that the defendant had constructive knowledge that wooden poles in a park, *and specifically the pole that failed,* were decaying and in danger of collapsing, because an expert in wood pathology testified that the city was aware that the pole had significant decay and had previously treated the pole for rot. Id. Moreover, the accident in *James* occurred prior to the amendment of R.C. 2744.02(B)(3); therefore, the court was analyzing the facts of the case under a "nuisance" standard.

{¶ 41} Although there is little debate that the fallen tree in this case became an obstruction in the roadway when it fell, we find that the Metroparks must have had either actual or constructive knowledge of the obstruction before liability can be imposed. Therefore, we find that the exception to immunity under R.C. 2744.02(B)(3) does not apply to this case, because there was no evidence presented that the Metroparks was on notice of the obstruction in the roadway.[4]

### Defenses Against Liability

{¶ 42} Even if we were to find that a genuine issue of fact remained about whether the Metroparks was negligent for failing to keep the premises in repair and open, we would find that a defense to liability under R.C. 2744.03 restores the Metroparks' immunity because the inspection and care of trees falls within its exercise of judgment and discretion as to how park resources are used and allocated.

{¶ 43} R.C. 2744.03(A)(5) states that "[t]he political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the

---

4. We are cognizant of the fact that the amendment of R.C. 2744.02(B)(3) from "nuisance" to "obstruction" means that a political subdivision will probably never be found to be on notice of an obstruction that occurs simultaneously with an accident, thereby making it impossible for a plaintiff to recover in these types of situations. As the Ohio Supreme Court noted in *Howard,* 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 26, "the legislature's action in amending R.C. 2744.02(B)(3) was not whimsy but a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways."

exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 44} As the Metroparks notes in its brief, it is responsible for more than 21,000 acres of park property, most of which is wooded terrain. The park system has a formalized vegetative-maintenance program, and there was no evidence presented that it did not comply with that program. It would be difficult to require the Metroparks to be responsible for inspecting every tree within that 21,000 acres. Although the trial court found that a genuine issue of material fact remained as to whether the Metroparks acted in a wanton and reckless manner in its implementation of vegetation maintenance, our de novo review of the record shows no evidence of such an issue.

{¶ 45} Therefore, we find that the Metroparks is immune from liability pursuant to Ohio's Political Subdivision Tort Liability Act.

{¶ 46} The Metroparks' first assignment of error is sustained.

### Recreational Use Statute

{¶ 47} The Metroparks further argued that it was immune from liability under the recreational-use statute, R.C. 1533.181. The trial court found that its argument failed "because a genuine issue of material fact exists regarding whether the plaintiffs' use of the public road was recreational. The court finds that while Riverview Road flows through Cleveland Metroparks by right of way, the same does not establish it as exclusively for recreational use. Furthermore, this court finds that transportation via motorcycle-vehicle does not establish exclusively recreational activity." We disagree.

{¶ 48} R.C. 1533.181 provides:

(A) No owner, lessee, or occupant of premises:

(1) Owes any duty to a recreational user to keep the premises safe for entry or use;

(2) Extends any assurance to a recreational user, through the act of giving permission, that the premises are safe for entry or use;

(3) Assumes responsibility for or incurs liability for any injury to person or property caused by any act of a recreational user.

"A recreational user" means a person to whom permission has been granted, without the payment of a fee or consideration to the owner, * * * to enter

upon premises to hunt, fish, trap, camp, hike, swim, * * * or to engage in other recreational pursuits.

R.C. 1533.18(B).

{¶ 49} In *Marrek v. Cleveland Metroparks Bd. of Commrs.* (1984), 9 Ohio St.3d 194, 9 OBR 508, 459 N.E.2d 873, the Ohio Supreme Court held that R.C. 1533.181 applies to recreational users of the Cleveland Metroparks System. Additionally, we have held that the statute includes a roadway within the Metroparks system as a "premises" within the meaning of R.C. 1533.18. *Milliff v. Cleveland Metroparks Sys.* (June 4, 1987), Cuyahoga App. No. 52315, 1987 WL 11969.

{¶ 50} In *Milliff,* we analyzed precedent on this issue and concluded that the Metroparks owed no duty to a recreational cyclist biking in the Metroparks. We found as follows:

In *Marrek*[,] *Fetherolf*[5] and *Phillips*[6] the issue was simply whether the plaintiff was a recreational user. If the answer was yes, no liability existed. Id. at *3.

Appellant, in the case at bar, asks us to shift our determination away from her status and instead hold that R.C. 1533.181 does not afford immunity to Metroparks for the affirmative creation of a "dangerous condition," to wit: the erection of a stone barrier on a roadway.

Appellant[']s argument is not well taken. This court has already determined that the creation of hazardous conditions does not change the determinative factor i.e., whether the plaintiff was a recreational user. * * *

It is clear that appellant did not pay a fee or consideration for admission or entrance to the Metropark. Appellant testified that she entered the Metropark to take a "casual, leisurely bicycle" ride. We conclude that a bicycle ride is a recreational pursuit within the meaning of R.C. 1533.18(B). Appellant's status was one of a recreational user and as a result the Metroparks owed her no duty to keep the premises safe. * * * Further, we hold that the recreational users' statute does not contemplate a distinction between what appellant terms as passive and active negligence. The statute protects all owners of land who fall within it from all acts of negligence. Its application simply turns on the status of the plaintiff.

*Milliff,* 1987 WL 11969, at *3.

{¶ 51} See also *Erbs v. Cleveland Metroparks Sys.* (Dec. 24, 1987), Cuyahoga App. No. 53247, 1987 WL 30512 (holding that the Metroparks owe no duty to a bicyclist on the park's multipurpose path).

---

**5.** *Fetherolf v. State* (1982), 7 Ohio App.3d 110, 7 OBR 142, 454 N.E.2d 564.

**6.** *Phillips v. Ohio Dept. of Natural Resources* (1985), 26 Ohio App.3d 77, 26 OBR 252, 498 N.E.2d 230.

{¶ 52} Likewise, we must disagree with the finding of the trial court that an issue of material fact existed regarding whether the Finleys' use of the road was recreational. The evidence presented thus far clearly indicates that the Finleys were enjoying a leisurely ride on Patrick's motorcycle. The Finleys did not pay a fee or consideration for admission or entrance to the Metropark. Patrick testified at deposition that he and his wife had set out from their home with no destination in mind. They stopped at one of the picnic areas to eat and were driving home when the tree fell.

{¶ 53} At oral argument, counsel for the Finleys argued that the Finleys' use of the road was not recreational because they were headed home from their picnic, which is akin to a motorist using Riverview Road to commute to and from work. We disagree. "[A] recreational use does not end its character as recreational merely because the user is returning from the recreational activity, especially if the user's method of travel is indistinguishable in outward appearance from the recreational activity." *Price v. New Madison* (Oct. 26, 1994), Montgomery App. No. 1348, 1994 WL 587548, discretionary appeal not allowed (1995), 71 Ohio St.3d 1494, 646 N.E.2d 469. And "recreation involving a motor vehicle does not enjoy an exemption from the scope of the recreational immunity statute."

{¶ 54} Therefore, we conclude that the Finleys' motorcycle ride in the Metroparks was a recreational pursuit within the meaning of R.C. 1533.18(B). The Finleys' status was one of a recreational user, and therefore, the Metroparks owed them no duty to keep the premises safe. R.C. 1533.181; *Marrek,* 9 Ohio St.3d 194, 9 OBR 508, 459 N.E.2d 873. *Milliff,* 1987 WL 11969.

{¶ 55} Therefore, the Metroparks' second assignment of error is sustained.

{¶ 56} Accordingly, the judgment is reversed, and the cause is remanded to enter the granting of summary judgment in favor of the city and the Metroparks.

Judgment accordingly.

DYKE, P.J., and COONEY, J., concur.