[Cite as *Stone v. Northmont City Schools*, 2022-Ohio-1116.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| BRUCE STONE, et al. | : | |
| | : | |
| Plaintiffs-Appellants | : | Appellate Case No. 29271 |
| | : | |
| v. | : | Trial Court Case No. 2020-CV-601 |
| | : | |
| NORTHMONT CITY SCHOOLS, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 1st day of April, 2022.

. . . . . . . . . . .

JACK J. LAH, Atty. Reg. No. 0078474, 3033 Kettering Boulevard, Suite 213, Dayton, Ohio 45439
    Attorney for Plaintiffs-Appellants

BRIAN L. WILDERMUTH, Atty. Reg. No. 0066303 and ZACHARY J. CLOUTIER, Atty. Reg. No. 0097160, 50 Chestnut Street, Suite 230, Dayton, Ohio 45440
    Attorneys for Defendants-Appellees

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Appellants Bruce and Gail Stone appeal from the trial court's judgment granting summary judgment in favor of Appellees Northmont City Schools ("NCS") and its employee, Lori Barnes, and dismissing the Stones' complaint for personal injuries based upon recreational user immunity pursuant to R.C. 1533.181. We hereby affirm the judgment of the trial court.

{¶ 2} On August 23, 2019, Bruce was riding a bicycle on a bike trial open to the public along National Road in Clayton, near the Northmont Middle School and Northmont High School Complex. Bruce rode his bike into a rope "securely attached on each side of the bike trail," several feet off the surface of the trail, causing him to fall and sustain serious and permanent injuries. The Stones alleged that the rope was negligently placed by Lori Barnes, while acting in the course of her employment at NCS, and that NCS was vicariously liable for Bruce's injuries. The Stones filed claims for negligence and loss of consortium on February 3, 2020, seeking in excess of $25,000 in damages.

{¶ 3} NCS and Barnes answered the complaint on March 4, 2020, and they filed a motion for summary judgment on February 8, 2021. In their motion, they argued that they were entitled to judgment as a matter of law because they were immune from civil liability under Ohio's recreational user statute, R.C. 1533.181, because "a defect in the condition of the premises" caused Bruce's injury. NCS and Barnes further asserted that, if the Stones were contending that their injuries were due to Barnes's negligence, rather than a condition of the premises, they were immune from liability under R.C. Chapter 2744, Ohio's political subdivision immunity statute. NCS and Barnes requested that the court dismiss the Stones' complaint.

{¶ 4} The Stones attached an affidavit of Brandon Knecht, the Director of Business

Services for NCS, to their motion for summary judgment. Knecht averred as follows:

4. On the date of the August 23, 2019 cycling accident, the Board of Education of the Northmont School District was the owner of the Northmont Middle School, which is located on property at 4810 W. National Road, Clayton, Ohio ("Northmont Middle School Property.").

5. From the August 23, 2019 cycling accident to the present, the Board of Education of the Northmont School District continued to be the owner of the Northmont Middle School Property.

6. In 2014, the Board of Education of the Northmont School District granted a perpetual non-exclusive easement over and across the Northmont Middle School Property to the City of Clayton, Ohio. * * *

7. As part of the "Multi-Use Path and Easement Agreement," the City of Clayton "intended to design, engineer, construct and maintain a multi-use path for pedestrians, bicycles and other non-motorized vehicles, a pedestrian bridge and other features * * * on the south side of National Road within the limits of the City [of Clayton] and over and across a portion of the Northmont [Middle School] Property."

* * *

10. Based on Bruce Stone's deposition testimony and the accompanying deposition exhibits, and based on my knowledge of the property, the August 23, 2019 cycling accident occurred on the Northmont Middle School Property.

11. Based on Bruce Stone's deposition testimony, the August 23,

2019 cycling accident occurred on the multi-use path described in the exhibits accompanying this affidavit.

Attached to the affidavit were copies of the "Multi-Use Path Easement Agreement" between the Board of Education of the Northmont School District and the City of Clayton, the "Memorandum of Understanding" for the multi-use path project, and the "Maintenance Agreement" for the multi-use path project.

{¶ 5} The Stones opposed the motion for summary judgment, arguing that "a thin rope suspended over and across the end of a blind curve in a paved trail routinely used by bicyclists traveling at a rate of dozens of miles per hour is not a defect *in the premises*." According to the Stones, because NCS failed to demonstrate that Bruce was injured by a defect in the premises, it was not immune from liability, and its motion for summary judgment should have been denied.

{¶ 6} The Stones asserted that Bruce had been cycling for 10 or 15 years and that his typical route "included riding through a residential neighborhood to connect with the National Trail," which "runs parallel to National Road and toward Northmont middle and high schools."  On August 23, 2019, Bruce was "riding a loop," which took about 30 minutes to complete, and his pace was about 15 miles per hour; Bruce was on his fourth loop of the morning when his accident occurred.  Specifically, they asserted that, as Bruce was cycling out of a sharp curve along the trail, he "unexpectedly encountered a white rope suspended over the trail" that "caught his bike," and he fell to the ground.  The Stones argued that Bruce had no reason to anticipate the rope's presence.  They further asserted that, while Bruce was in pain on the ground, Barnes approached him, admitted she had put the rope in place, and apologized.  (Barnes was the middle school cross-

country coach.) The Stones did not dispute that Bruce was a recreational user pursuant to R.C. 1533.18(B), but they did dispute that he was a recreational user injured by a defect in the premises.

{¶ 7} The Stones further asserted that NCS and Barnes were not entitled to summary judgment pursuant to R.C. Chap. 2744. They argued that the "assembly of a running course is an act by an employee of a political subdivision that is designed to promote [the] health of public school students."

{¶ 8} NCS and Barnes filed a reply asserting that the "proposed distinction that recreational use immunity is inapplicable if the claimed injury involved an aboveground object is unsupported by Ohio law." NCS and Barnes also asserted that the Stones had not established an exception to political subdivision immunity, and Barnes was immune from liability for negligence under R.C. 2744.03(A)(6).

{¶ 9} NCS and Barnes asserted that the "Ohio Supreme Court has recognized the application of recreational user immunity in cases involving objects above the ground or suspended in the air." NCS and Barnes argued that the Stones' proposed distinction found no support in the plain language of the recreational user statute, which does not draw any distinction between subsurface and aboveground defects that render a premises unsafe; the statute states generally that an owner has no duty to keep the premises safe. NCS and Barnes argued that Bruce sustained injury as a result of an existing condition on the Northmont Middle School grounds and that it was immaterial how long the condition had been present. "At the time of the cycling accident, the roping had been installed and had become a condition of the premises." According to NCS and Barnes, pursuant to the Stones' reasoning, "objects like fences and tennis court nets

would be exempt from [the] recreational user status simply because they extended above the ground and into the air."

{¶ 10} NCS and Barnes argued that they were entitled to summary judgment under R.C. Chapter 2744. They asserted that the Stones had failed to address, and therefore had waived, "any opposition to * * * the issue of whether Barnes [was] entitled to summary judgment in her favor under R.C. 2744.03(A)(6)(b)." According to NCS, the Stones had not challenge whether the roping across the trail qualified as a physical defect under R.C. 2744.02(B)(4), and thus they had waived any responsive arguments on that issue as well. NCS and Barnes asserted that Ohio law supports the conclusion that that Barnes's assembly of the racecourse was a governmental function, not a proprietary function, and that Ohio courts have held that public school athletics and extracurricular activities fall within the "provision of a system of public education."

{¶ 11} The trial court sustained NCS and Barnes's motion for summary judgment. The court noted that the issue before it boiled down to the character of the rope: "whether the rope strung across the Northmont Trail was a condition in the premises for purposes of the recreational user statute, and if not, whether this rope was a physical defect in the premises for purposes of the sovereign immunity statutes." The court noted that Barnes, the middle school cross-country coach, had strung the rope across the trail between two white stakes in order to mark the cross-county course for a race that was taking place the next day. The Northmont High School cross-country coach (who was Barnes's husband) had described the rope that was used as being visible "50 to 100 meters ahead," and said that it had been strung where it was following a course design created by the Athletic Director and Mr. Barnes. According to Mr. Barnes, he had worked with the head cross-

country coach at Miami Valley CTC, who had at least 40 years of experience designing cross-country courses, to design Northmont's course. The same cross-country course had been used for two meets in 2018. There was some disagreement as to who knew that the white stakes and rope marking the course were strung across the trail the day before the meet. The trail is not closed to the public until the day of the meet; at that point, a table is set up at the beginning of the pathway in order to collect money from spectators.

{¶ 12} In sustaining NCS and Barnes's motion for summary judgment, the trial court found that no genuine issues of material fact existed as to whether NCS and Barnes were liable for Bruce's injuries. In concluding that the rope was a condition of the premises, the court rejected the Stones' attempt to make a factual distinction between imbedded objects and suspended objects as "not an accurate distinction."

{¶ 13} The court found that there was no dispute that the recreational user statute applied, since NCS and Barnes and the Stones agreed that the Northmont Trail was the type of premises covered by the recreational user statute and that Bruce was a recreational user of the premises. The court noted that the rope was attached to Northmont's property between two white stakes that were in the ground. As such, the court found that the rope was a condition of the premises.

{¶ 14} The court further found that, because the rope strung across the trail was a condition of the premises, and because Bruce was a recreational user of the trail, NCS and Barnes were immune from liability under R.C. 1553.181. The court stated:

> * * * [T]he alleged defect in the Northmont trail was arguably created
>
> by Ms. Barnes, a [Board of Education] employee. As explained by [the

Athletic Director], he did not know that the rope would be strung across the Northmont Trail 24 hours before a cross-country meet and noted that on the day of meets, the Trail is closed to the public during the race. However, the Northmont Trail was not closed off the day before the meet (i.e., the day which the rope was strung) and no warning signs were posted about the rope. Even if Ms. Barnes was negligent in stringing the rope across the Trail and created the hazard, [NCS and Barnes's] immunity under the recreational user statute is not affected.

On this basis, the trial court found that because the rope was a condition of the premises, and Bruce was a recreational user of the premises, NCS and Barnes were immune from liability under R.C. 1553.818.

{¶ 15} The court declined to address whether NCS and Barnes were immune from liability under Ohio's political subdivision immunity statutes, because it had already found them to be immune under the recreational user statute, and the Stones had not asserted any intentional tort claims against Barnes.

{¶ 16} The Stones assert a single assignment of error on appeal:

THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR NORTHMONT WHEN NORTHMONT WAS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.

{¶ 17} The Stones argue that when Barnes "planted the stakes and installed the rope to block the trail," the trail was closed to the public and the "essential character" of the premises changed, such that the recreational user statute, R.C. 1533.181(A), did not apply. According to the Stones, "the essential character of the premises changed to a

private school run cross-country race."   They argue that the "essential character of the recreational premises must stay intact to have immunity under the recreational user statute."   They assert that, applying the recreational user and premises definitions to this case, Bruce was not a recreational user on recreational premises at the time of his injury; they assert that, because the character of the premises changed, Bruce's status also changed.   According to the Stones, when Barnes marked the cross-country course with the rope, the essential character of the premises changed because the trail was no longer held open to the public free of charge.

{¶ 18} The Stones argue that the cross-country course is closed to the public during the race, including installing a table to collect a fee from spectators and to ensure that the course is not encumbered with recreational users during the event.   They assert that Barnes's "negligent action and omissions" stripped the trail – or at least the protion owned by NCS – of recreational user immunity, "because it went from a free public trail that can be walked, jogged, or cycled, to a private race where the school charges patrons a fee to attend."

{¶ 19} The Stones assert that Bruce was injured by the negligent actions of an employee, Barnes, and not a condition of the premises, with the negligence being that she set up the course 24 hours before a race without taking precautions to block the trail or limit the pedestrian traffic.   They argue that Bruce would not have suffered injury but for Barnes's actions, and they characterize the stakes and rope that she brought onto the premises as having changed the nature of the premises to a cross-country course, because it could no longer function as a recreational premise.

{¶ 20} The Stones argue that if a "paved path is blocked by a cross-country course

that limits access and does not allow someone to travel the path, it cannot fairly be said that the essential character of the trail has remained intact. Rather, it has changed to a gathering place for spectators of the cross-country race that were required to pay a fee to attend." According to the Stones, the rope was not a defect in the premises of Northmont Trail but a defect in the premises of the cross-country course, which was not open to the public without charge; therefore, Northmont and Barnes were not immune from liability.

{¶ 21} Finally, the Stones assert that NCS and Barnes were not immune from liability under R.C. Chapter 2744 because an exception applied that stripped them of their immunity. Specifically, the Stones cite R.C. 2744.02(B)(4), arguing that, because the physical defect on the property – the hazard created by Barnes – was on a cross-country course and not a recreational premises, it was on property of the political subdivision that was being used to further a governmental function.

{¶ 22} NCS and Barnes respond that the Stones have not assigned error to the trial court's grant of summary judgment to Barnes and have, in fact, conceded that Barnes is immune from liability. They also point out that the Stones raise new arguments in their brief that were not raised in the trial court, and thus were not preserved for appeal. They assert that, for the first time, on appeal, the Stones challenge whether Bruce was a "recreational user" at the time of the accident. They further argue that the "undisputed evidence in the record" established that the Northmont Middle School grounds were open to the public, free of charge, at the time of the accident; "when viewed as a whole, one can only reasonably conclude that the school grounds were (and continue to be) recreational in nature and that Bruce Stone was therefore a recreational user at the time

of the accident." NCS and Barnes assert that the Stones waived any challenge to whether Bruce was a recreational user at the time of the accident by failing to contest the issue in the summary judgment proceedings below.

{¶ 23} NCS and Barnes assert that "when viewed as a whole, one can only reasonably conclude that the Northmont Middle School grounds were recreational in nature" and that they were therefore protected by the recreational user statute, noting that the grounds contain the National Trail as well as numerous athletic facilities, fields, courts, etc. According to NCS and Barnes, the section of the National Trail that traverses the Northmont Middle school grounds "is merely one aspect of the larger public area," and in focusing solely on the National Trail by itself, the Stones ignore the Ohio Supreme Court's direction that courts must evaluate the premises as a whole.

{¶ 24} NCS and Barnes argue that the portion of the National Trail on the Northmont Middle School grounds continued to function as a multi-use trail at the time of the cycling accident, "albeit one with a physical hazard across it." They argue that the trail continued functioning for its intended purpose, but that it was less safe due to a new condition of the premises. According to NCS and Barnes, the Stones were "misguided" in their suggestion that the temporary nature of the stakes and roping was pertinent, because nothing in the applicable case law "restricts the analysis to permanent manmade objects or conditions."

{¶ 25} NCS and Barnes assert that a "defective condition" of the premises caused Bruce's injuries, but the fact that the defective condition was "human-created" was irrelevant and did not strip them of immunity under the recreational user statute.

{¶ 26} Regarding liability pursuant to R.C. Chapter 2744, NCS and Barnes argue

that even if we were to reach the merits of this argument (which we should not, because it was waived), it must fail, because even if the Stones evaded recreational user immunity and established that employee negligence caused Bruce's injuries, the Stones could not also establish that the physical defect exception applies here, and political subdivision immunity should apply. According to NCS and Barnes, "to avoid the Board's immunity under R.C. Chapter 2744, the Stones must accept that Bruce Stone sustained injury as the result of a physical defect on the Board's property," but if "they so accept, their claims are barred by the recreational user immunity statute."

{¶ 27} The following is well-settled:

Pursuant to Civ.R. 56(C), a movant is entitled to summary judgment when that party demonstrates that there is (1) no issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the non-moving party. *Rhododendron Holdings, LLC v. Harris*, 2021-Ohio-147, 166 N.E.3d 725, ¶ 22 (2d Dist.).

"The burden of demonstrating that no genuine issues exist as to any material fact falls upon the moving party requesting a summary judgment." *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). Once the moving party has satisfied its burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). The nonmoving party cannot rely upon the mere allegations or denials in

the pleadings but must provide evidence setting forth specific facts showing that there is a genuine issue of material fact for trial. Civ.R. 56(E). *Accord Geloff v. R.C. Hemm's Glass Shops, Inc.*, 2021-Ohio-394, 167 N.E.3d 1095, ¶ 14 (2d Dist.). When the standard is met, summary judgment must be awarded as a matter of law.

We review the trial court's ruling on a summary judgment motion de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012-CA-18, 2013-Ohio-2767, ¶ 42.

*Martcheva v. Dayton Bd. of Edn.*, 2021-Ohio-3524, 179 N.E.3d 687, ¶ 33-35 (2d Dist.).

**{¶ 28}** "In 1963, the General Assembly enacted the recreational user statute, R.C. 1533.18 et seq., Am.H.B. No. 179, 130 Ohio Laws 423, 1638, 'to encourage owners of premises suitable for recreational pursuits to open their land to public use without fear of liability.' *Loyer v. Buchholz,* 38 Ohio St.3d 65, 66, 526 N.E.2d 300 (1988)." *Combs v. Ohio Dept. of Natural Resources, Div. of Parks*, 146 Ohio St.3d 271, 2016-Ohio-1565, 55 N.E.3d 1073, ¶ 11:

**{¶ 29}** R.C. 1533.181(A) provides:

(A) No owner, lessee, or occupant of premises:

(1) Owes any duty to a recreational user to keep the premises safe for entry or use;

(2) Extends any assurance to a recreational user, through the act of giving permission, that the premises are safe for entry or use;

(3) Assumes responsibility for or incurs liability for any injury to person or property caused by any act of a recreational user.

{¶ 30} R.C. 1533.18 provides the following definitions:

(A) "Premises" means all privately owned lands, ways, and waters, and any buildings and structures thereon, and all privately owned and state-owned lands, ways, and waters leased to a private person, firm, or organization, including any buildings and structures thereon.

(B) "Recreational user" means a person to whom permission has been granted, without the payment of a fee or consideration to the owner, lessee, or occupant of premises, other than a fee or consideration paid to the state or any agency of the state, or a lease payment or fee paid to the owner of privately owned lands, to enter upon premises to hunt, fish, trap, camp, hike, or swim, or to operate a snowmobile, all-purpose vehicle, or four-wheel drive motor vehicle, or to engage in other recreational pursuits.

{¶ 31} In *Combs*, a user of a park operated by the Ohio Department of Natural Resources (ODNR) was struck by a rock that was thrown from the lawnmower a park employee was operating. The Ohio Supreme Court held that ODNR was not immune because the injury was caused not by a condition of the premises, but from the negligence of the park worker who mowed over loose stones along the waterway." *Combs* at ¶ 20; *see also Gilbert v. City of Cleveland*, 8th Dist. Cuyahoga No. 10734, 2019-Ohio-3517, ¶ 23.

{¶ 32} As noted by the *Combs* Court, the supreme court's jurisprudence holding that the recreational user statute precludes liability involves injuries arising from the condition of the premises, i.e., the lands, ways, and waters, and any buildings or structures thereon, or from the acts of another recreational user. *See, e.g.,* as cited in

*Combs* at ¶ 16*: Pauley v. Circleville*, 137 Ohio St.3d 212, 2013-Ohio-4541, 998 N.E.2d 1083, ¶ 32 (railroad-tie-like object embedded in a mound of dirt covered in snow); *LiCause v. Canton*, 42 Ohio St.3d 109, 537 N.E.2d 1298 (1989) (cable strung between two posts); *Miller v. Dayton*, 42 Ohio St.3d 113, 537 N.E.2d 1294 (1989) (softball field); *Sorrell v. Ohio Dept. of Natural Resources, Div. of Parks & Recreation*, 40 Ohio St.3d 141, 532 N.E.2d 722 (1988) (mound of dirt protruding from frozen surface of lake); *Johnson v. New London*, 36 Ohio St.3d 60, 521 N.E.2d 793 (1988) (above-ground cable installed to prevent driving on retention embankment); *Mitchell v. Cleveland Elec. Illum. Co.*, 30 Ohio St.3d 92, 507 N.E.2d 352 (1987) (undertow in Lake Erie); *Marrek v. Cleveland Metroparks Bd. of Commrs.*, 9 Ohio St.3d 194, 459 N.E.2d 873 (1984) (recreational user struck by another recreational user while sledding); *Moss v. Dept. of Natural Resources,* 62 Ohio St.2d 138, 404 N.E.2d 742 (1980) (consolidated cases involving one claimant injured by stepping in a hole and one who drowned); *McCord v. Ohio Div. of Parks & Recreation,* 54 Ohio St.2d 72, 375 N.E.2d 50 (1978) (drowning at a designated swimming area at a lake).

{¶ 33} In *Pauley,* the appellants asserted that R.C. 1533.181 did not apply when a property owner made the property "more dangerous without promoting or preserving recreational facilities." *Id.* at ¶ 10. The Supreme Court of Ohio concluded that, in determining whether immunity applies, courts must examine the essential character of the property. First, the property must be held open to the public for recreational use, free of charge." *Id.* at ¶ 16. The court further noted as follows:

The character of the premises envisioned by the recreational-user statute involves "the true outdoors," because "[m]ost of the recreational

activities enumerated in R.C. 1533.18(B) are generally conducted in 'the wide open spaces,' such as parks or wilderness tracts * * *." *Loyer* [*v. Buchholz,* 38 Ohio St.3d 65, 67, 526 N.E.2d 300 (1988)]. Recreational premises typically "include elements such as land, water, trees, grass, and other vegetation." *Miller v. Dayton,* 42 Ohio St.3d 113, 114, 537 N.E.2d 1294 (1989).

*Id.* at ¶ 17.

**{¶ 34}** The *Pauley* court continued:

The types of recreational activities that qualify as a recreational use are diverse. R.C. 1533.181(B) lists hunting, fishing, trapping, camping, swimming, operating a snowmobile, all-purpose vehicle, or four-wheel-drive motor vehicle, and "other recreational pursuits" as examples of the types of activities contemplated by the statute. And courts have broadly construed "other recreational pursuits" to include sledding, *Marrek v. Cleveland Metroparks Bd. of Commrs.,* 9 Ohio St.3d 194, 459 N.E.2d 873 (1984); horseback riding, *Crabtree v. Shultz,* 57 Ohio App.2d 33, 384 N.E.2d 1294 (10th Dist.1977); watching others swim, *Fetherolf v. Ohio Dept. of Natural Resources,* 7 Ohio App.3d 110, 454 N.E.2d 564 (10th Dist.1982); motorcycle riding, *Kelley v. Differential Corp.,* 3d Dist. Hancock No. 5-81-35, 1982 WL 6787 (May 6, 1982); using a swingset, *Vitai v. Sheffield Lake,* 9th Dist. Lorain No. 4045, 1987 WL 5561 (Jan. 21, 1987); riding a merry-go-round, *Miller v. Sheffield Lake,* 9th Dist. Lorain No. 4133, 1987 WL 9477 (Apr. 8, 1987); riding a bicycle, *Erbs v. Cleveland Metroparks Sys.,* 8th Dist.

Cuyahoga No. 53247, 1987 WL 30512 (Dec. 24, 1987); and watching others play baseball, *Buchanan v. Middletown,* 12th Dist. Butler No. CA86-10-156, 1987 WL 16062 (Aug. 24, 1987).

*Id.* at ¶ 19.

**{¶ 35}** Ultimately, the Court held:

Under R.C. 1533.181(A)(1), "[n]o owner owes *any duty* to a recreational user to keep the premises safe for entry or use." (Emphasis added.) A duty is "[a] legal obligation that is owed or due to another and that needs to be satisfied." *Black's Law Dictionary* 580 (9th Ed.2009). Generally speaking, "[i]f there is no duty, no liability can follow." *Collins v. Sabino,* 11th Dist. Trumbull No. 96-T-5590, 1997 WL 531246, * 4 (Aug. 29, 1997), fn. 5. Consequently, an owner cannot be held liable for injuries sustained during recreational use "even if the property owner affirmatively created a dangerous condition." *Erbs v. Cleveland Metroparks Sys.,* at *2, citing *Milliff v. Cleveland Metroparks Sys.,* 8th Dist. Cuyahoga No. 52315, 1987 WL 11969 (June 4, 1987); *see also Phillips v. Ohio Dept. of Natural Resources,* 26 Ohio App.3d 77, 79, 498 N.E.2d 230 (10th Dist.1985) (property owner not liable to recreational user for willful and wanton failure to warn of dangerous condition); *Press v. Ohio Dept. of Natural Resources,* Ct. of Cl. No. 2005-100004-AD, 2006-Ohio-1024, ¶ 11 (property owner not liable to recreational user for injuries caused by owner's affirmative creation of a hazard). The determination of whether R.C. 1533.181 applies depends not on the property owner's actions, but on whether the person

using the property qualifies as a recreational user. *Estate of Finley v. Cleveland Metroparks,* 189 Ohio App.3d 139, 2010-Ohio-4013, 937 N.E.2d 645, ¶ 50 (8th Dist.); *Look v. Cleveland Metroparks System,* 48 Ohio App.3d 135, 137, 548 N.E.2d 966 (8th Dist.1988).

*Id.* at ¶ 21.

{¶ 36} *Pauley* further distinguished *Ryll v. Columbus Fireworks Display Co., Inc.* 95 Ohio St.3d 467, 2002-Ohio-2584, 769 N.E.2d 372, and *Miller v. Dayton,* 42 Ohio St.3d 113, 537 N.E.2d 1294, as follows:

In *Ryll,* a spectator was attending a fireworks show sponsored by the city of Reynoldsburg when he was fatally injured by shrapnel from a fireworks shell. The spectator's estate sued the city, which asserted that it was immune from liability under the recreational-user statutes. We held that the recreational-user statute immunizes property owners from injuries that arise from a defect in the premises. Because the shrapnel was not a defect *in the premises,* immunity did not apply.

In *Miller*, the plaintiff was playing in a softball tournament in a park owned by the city of Dayton when he was injured sliding into second base. The plaintiff sued the city seeking to recover for his injuries. The trial court granted summary judgment to the city pursuant to R.C. 1533.181.

The court of appeals reversed the trial court's judgment. The court of appeals held that a baseball diamond is an artificial, manmade development, bearing little resemblance to land in its natural state. Thus, the court of appeals held that the plaintiff was not a recreational user, and

the city was not immune.

This court held that "[i]n determining whether a person is a recreational user under R.C. 1533.18(B), the analysis should focus on the character of the property upon which the injury occurs and the type of activities for which the property is held open to the public." *Miller,* 42 Ohio St.3d 113, 537 N.E.2d 1294, at paragraph one of the syllabus.

In its analysis, this court stated that "the presence of man-made improvements on a property does not remove the property from statutory protection." *Id.* at 114, 537 N.E.2d 1294. "To qualify for recreational-user immunity, property need not be completely natural, but its essential character should fit within the intent of the statute." *Id.* We further instructed that the premises should be "viewed as a whole" to determine whether users enter to hunt, fish, trap, camp, hike, swim, or engage in other recreational pursuits. *Id.* at 115, 537 N.E.2d 1294.

Applying this test, we held that "[t]he essential character of [the ballpark] is that of premises held open to the plaintiff, without fee, for recreational purposes" and that improvements such as "dugouts, fences, base plates, and similar manmade structures" did not change the park's essential character as outdoor premises used for recreational purposes within the recreational-user statutes. *Id.* Thus, the plaintiff was a recreational user, and the city was immune from suit.

We find that the instant case is distinguishable from both *Ryll* and *Miller.* In *Ryll,* the injury was caused by a fireworks shell, not by a defect

on the city's premises, so R.C. 1533.181 did not immunize the city from liability.   In the instant case, the railroad-tie-like object was embedded in a mound of dirt that was part of the park at the time [plaintiff] suffered his accident.   Therefore, the injury was caused by a defect in the premises, making *Ryll* inapplicable.

*Pauley* at ¶ 26-32.

{¶ 37}  In this case, Knecht's affidavit made clear that the multi-use trail traversing the Northmont Middle School property was designed and constructed for use by pedestrians, bicycles, and other non-motorized vehicles, i.e. for recreational use.   Before the trial court, it was undisputed that Bruce enjoyed the status of a recreational user of the trail; the Stones' memorandum in opposition stated that Bruce did "not dispute that [he] was a 'recreational user' " of the premises.

{¶ 38} As noted in *Combs,* consistent jurisprudence precluding liability pursuant to R.C. 1533.181(A)(1) "involves injuries arising from the condition of the premises."   As the trial court determined, at issue was the nature of the rope installed by Barnes, namely whether it was a condition of the premises for purposes of the recreational user statute, or a physical defect in the premises for purposes of the exception in R.C. 2744.02(B)(4)[1].

---

[1] As this Court has noted:   "The analysis of whether a political subdivision is immune from liability under R.C. Chapter 2744 involves a three-point analysis.   *Colbert v. City of Cleveland,* 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7.   First, 'the general rule [is] that a political subdivision is immune from liability incurred in performing either a governmental function or [a] proprietary function.'   *Id.*   Second, 'a court [must] determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) appl[ies] to [abrogate] the political subdivision['s] [immunity from] liability.'   *Id.* at ¶ 8.   Third, if any of the five exceptions is applicable, 'and no defense [established in R.C. 2744.02(B) shields] the political subdivision from liability, then the * * * court [must] determine whether any of the defenses in R.C. 2744.03 appl[ies].'   *Id.* at ¶ 9.   [According to the exception] set forth in R.C. 2744.02(B)(4), * * * a political subdivision is 'liable for injury * * * that is caused by

{¶ 39} We conclude that the Stones failed to establish any genuine issue of material fact precluding summary judgment. Distinct from *Combs* and *Ryll*, at the time of the accident, Barnes had strung the rope across the trail between two white stakes secured in the ground; the rope then became a condition of the premises. This conclusion is supported by the fact that, at the time of the accident, the trail remained open to the public free of charge, and the installation of the rope did not, as the Stones suggest, somehow cause the trail to be closed to the public. In other words, viewing the recreational premises as a whole, the essential character thereof was not changed by the rope. We cannot agree with the Stones that the installation of the rope transformed the premises into a gathering place for spectators, required to pay a fee, to watch a cross-country meet. Since NCS owed no duty to Bruce at the time of the accident, there could be no ensuing liability against NCS and Barnes as a result of Bruce's collision with the rope.

{¶ 40} In the absence of a genuine issue of material fact regarding the recreational character of the multi-use trail, regarding Bruce's status as a recreational user, and regarding the nature of the rope as a condition of the premises, NCS and Barnes were entitled to summary judgment. Having found that the trial court did not err, as a matter of law, in granting summary judgment in favor of NCS pursuant to R.C. 1533.181, we need not address whether it would also have been immune from liability under R.C. Chapter 2744.

---

the negligence of [its] employees,' that 'occurs within or on the grounds' of a building that is 'used in connection with the performance of a governmental function,' and is the result of 'physical defects' within or on the grounds of the building." *Doe v. Greenville City Schools*, 2021-Ohio-2127, 174 N.E.3d 917, ¶ 23 (2d Dist.).

**{¶ 41}** The Stones' assignment of error is overruled.

**{¶ 42}** The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Jack J. Lah
Brian L. Wildermuth
Zachary L. Cloutier
Hon. Timothy N. O'Connell, Administrative Judge