[Cite as *Moskalik v. Mill Creek Metroparks*, 2015-Ohio-4826.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| MARY MOSKALIK, | ) | CASE NO. 15 MA 18 |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MILL CREEK METROPARKS, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
Pleas of Mahoning County, Ohio
Case No. 13CV1773

JUDGMENT:                                      Affirmed.

APPEARANCES:

For Plaintiff-Appellant:                     Atty. Gregg A. Rossi
Rossi & Rossi
26 Market Street, 8th Floor
Huntington Bank Building
P.O. Box 6045
Youngstown, Ohio 44501

For Defendants-Appellees:               Atty.Gregory A. Beck
Baker, Dublikar, Beck,
Wiley & Mathews
400 S. Main Street
North Canton, Ohio 44720

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated:  November 20, 2015

ROBB, J.

{¶1} Plaintiff-Appellant Mary Moskalik appeals the decision of the Mahoning County Common Pleas Court granting summary judgment in favor of Defendant-Appellee Mill Creek Metroparks. Appellant contends the park was not entitled to immunity under R.C. 1533.181, the recreational user statute. Only if that contention succeeds does Appellant argue there was a genuine issue of material fact as to whether the park was entitled to political subdivision immunity under Chapter 2744.

{¶2} For the following reasons, we hold Appellant was a recreational user of the park at the time of her injury, and thus, recreational user immunity applies. The trial court's decision is affirmed.

STATEMENT OF THE CASE

{¶3} The park maintains 4,000 acres of property. Part of that property is the Mill Creek Metroparks Farm which encompasses over 400 acres of land at 7574 Columbiana-Canfield Road in Canfield, Ohio. The park leases the original farm and 268 acres from Mahoning County. The remaining acreage was purchased or donated to the park. The property includes a trail, a working farm with animals and fields, farm offices, and an educational hall that can be rented for events. The Mill Creek Metroparks Bikeway runs through the farm property.

{¶4} On June 30, 2011, Appellant was walking in grass bordering a gravel trail on the farm property. The trail is called the "Mindy Henning Memorial Trail" and is located west of the bikeway. She stepped in a hole that was hidden from view by the grass and injured her leg, requiring surgery.

{¶5} On June 28, 2013, Appellant filed a complaint against the park as the operator of the farm and against the county as the owner of the land. She alleged: the defendants had a duty to keep the grass beside the trail in good repair; the hole was a latent defect on the property; and the defendants should have had knowledge of the defect. Answers were filed raising the defenses of recreational immunity and political subdivision immunity.

{¶6} The park filed a motion for summary judgment based upon these defenses. The park asserted immunity under the recreational user statute as

Appellant had permission to enter upon the premises without the payment of a fee to engage in recreational pursuits such as hiking or walking a trail. *See* R.C. 1533.181(A); R.C. 1533.18(B). The park alternatively asserted political subdivision immunity urging that none of the exceptions to immunity in R.C. 2744.02(B) applied.

{¶7} An affidavit, which incorporated a map of the farm, was attached to the motion. The property features were outlined. It was disclosed that the park does not require its maintenance crew to make regular inspections of the property for holes due to its size of 4,000 acres, but if a defect was discovered, such as while mowing, the maintenance crew would address it. The affidavit also pointed out that the park has animal holes and that a working farm has constantly changing ground conditions. The affidavit asserted that the farm was unaware of the hole in the grassy stretch along the trail prior to the incident. It has since been determined that the hole was created by the collapse of a portion of a clay tile drainage system from the 1930's or 1940's, when the property was used as an orchard. (Appellant's evidence shows that this was long before the park opened at the site in 1990.)

{¶8} Appellant filed a response in opposition to summary judgment. As to recreational immunity, she argued: public land does not meet the statutory definition of "premises" in R.C. 1533.18(A); the character of the farm is not consistent with the recreational pursuits contemplated by the recreational user statute; and the court should create a public policy exception where a hazard is manmade and/or where there is actual knowledge of the condition. Regarding political subdivision immunity, Appellant claimed that immunity was stripped by two exceptions in R.C. 2744.02: (B)(2) negligent acts with respect to a proprietary function (maintaining the hall at the farm, which could be rented, was akin to a social center and the farm is different than a traditional park); and (B)(4) employee negligence on the grounds of a public building or a buildings used for the performance of government functions (offices in buildings at farm involved in operating the park or farm itself is a government function).

{¶9} The park replied: Ohio Supreme Court case law holds that recreational immunity applies to public land; the character of land is the type encouraged to be made available to recreational users; and there are no exceptions to the statute. The

park concluded that further analysis of political subdivision immunity (and its exceptions) was not necessary due to the application of the recreational user statute, which eliminates any duty to keep the premises safe.

{¶10} On November 25, 2014, a magistrate granted summary judgment in favor of the park. The magistrate found that the park, including its farm, is held open to the public for recreational use, that Appellant was a recreational user, and that owners of premises held open for recreational use have immunity from liability for injuries sustained by persons using those premises. The magistrate alternatively stated that as a political subdivision, the park is generally not liable for injuries under R.C. 2744.02(A)(1), unless an exception in division (B) applies. The magistrate found that the exception in (B)(4) was inapplicable because the hole was not on the grounds of the buildings. The magistrate also concluded that Appellant failed to demonstrate negligence of a park employee.

{¶11} Appellant filed timely objections. Appellant argued that recreational immunity should not apply because the farm does not meet the definition of "premises" under the plain language of the statute and the character of the land is not a traditional park due to the working farm and/or its educational hall. Alternatively, Appellant proposed that a public policy exception to recreational immunity should be created because the park had actual notice of the clay tile drainage system which is an unnatural, manmade condition. Finally, Appellant's objections posited that the farm falls under the exception to political subdivision immunity applicable to the grounds of buildings used in connection with the performance of a government function. The objections referred the court to the prior brief in opposition to summary judgment "for a complete analysis."

{¶12} On January 26, 2015, the trial court overruled the objections, adopted the magistrate's decision, and entered summary judgment in favor of the park. Appellant filed the within appeal (after voluntarily dismissing the claim against the county). Appellant's sole assignment of error provides: "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE, MILL CREEK METROPARKS." Appellant first argues that the trial court erred in applying

recreational immunity. If this court agrees, Appellant argues that the trial court erred in alternatively applying political subdivision immunity.

SUMMARY JUDGMENT

**{¶13}** Summary judgment can be granted when there remains no genuine issue of material fact and when reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In determining whether there exists a genuine issue of material fact to be resolved at trial, the court is to consider the evidence and all reasonable inferences to be drawn from that evidence in the light most favorable to the non-movant. *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 11. Doubts are to be resolved in favor of the non-movant. *Leibreich v. A.J. Refrig., Inc.*, 67 Ohio St.3d 266, 269, 617 N.E.2d 1068 (1993). A court "may not weigh the proof or choose among reasonable inferences." *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 121, 18 O.O.3d 354, 413 N.E.2d 1187 (1980).

**{¶14}** Civ.R. 56 must be construed in a manner that balances the right of the non-movant to have a jury decide claims and defenses that are adequately based in fact with the right of the movant to demonstrate, prior to trial, that the claims and defenses have no factual basis. *Byrd v. Smith*, 110 Ohio St.3d 24, 26-27, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 11, citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant has the initial burden to show that no genuine issue of material fact exists. *Byrd*, 110 Ohio St.3d 24 at ¶ 10, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996). The non-moving party then has a reciprocal burden. *Id.* The non-movant's response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing that there is a genuine issue for trial and may not rest upon mere allegations or denials in the pleadings. Civ.R. 56(E).

**{¶15}** "The material issues of each case are identified by substantive law." *Byrd*, 110 Ohio St.3d 24 at ¶ 12. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*, quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We consider the propriety of granting

summary judgment under a de novo standard of review. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

<u>RECREATIONAL USER</u>

**{¶16}** The recreational immunity defense is contained in R.C. 1533.181 and the pertinent definitions are contained in R.C. 1533.18. The intent of the legislation was "to encourage owners of premises suitable for recreational pursuits to open their land to public use without worry of liability." *Moss v. Ohio Dept. of Natural Resources*, 62 Ohio St.2d 138, 142, 404 N.E.2d 742 (1980). R.C. 1533.181 is entitled "Exemption from liability to recreational users" and provides:

(A) No owner, lessee, or occupant of premises:

(1) Owes any duty to a recreational user to keep the premises safe for entry or use;

(2) Extends any assurance to a recreational user, through the act of giving permission, that the premises are safe for entry or use;

(3) Assumes responsibility for or incurs liability for any injury to person or property caused by any act of a recreational user.

(B) Division (A) of this section applies to the owner, lessee, or occupant of privately owned, nonresidential premises, whether or not the premises are kept open for public use and whether or not the owner, lessee, or occupant denies entry to certain individuals.

**{¶17}** A related statute defines premises as "all privately owned lands, ways, and waters, and any buildings and structures thereon, and all privately owned and state-owned lands, ways, and waters leased to a private person, firm, or organization, including any buildings and structures thereon." R.C. 1533.18(A). Division (B) of this statute defines a recreational user as:

a person to whom permission has been granted, without the payment of a fee or consideration to the owner, lessee, or occupant of premises, other than a fee or consideration paid to the state or any agency of the state, or a lease payment or fee paid to the owner of privately owned

lands, to enter upon premises to hunt, fish, trap, camp, hike, or swim, or to operate a snowmobile, all-purpose vehicle, or four-wheel drive motor vehicle, or to engage in other recreational pursuits.

**{¶18}** Appellant sets forth three arguments as to why recreational immunity should not apply. First, Appellant urges that the plain language of R.C. 1533.18(A) excludes the park property from the definition of "premises" because it is not private land and it is not private or state land leased to a private organization. The Ohio Supreme Court has recognized that a political subdivision does not have "direct" statutory immunity under the recreational user statutes but explained why there is "derivative" immunity from tort liability to recreational users of public land. *See, e.g., Johnson v. Village of New London*, 36 Ohio St.3d 60, 62, 521 N.E.2d 793 (1988).

**{¶19}** When the recreational user statutes were enacted, the state, its political subdivisions, and municipalities already had immunity from liability for recreational users by virtue of the common law doctrine of sovereign immunity. *Johnson*, 36 Ohio St.3d at 62. When the state statutorily waived its immunity and consented to be sued in accordance with the same law applicable to private parties, statutes such as R.C. 1533.18 and 1533.181 became applicable derivatively. *Id.*, citing R.C. 2743.02(A); *Moss*, 62 Ohio St.2d 138; *McCord v. Ohio Division of Parks & Recreation*, 54 Ohio St.2d 72, 375 N.E.2d 50 (1978).

**{¶20}** Likewise, when the Supreme Court abolished the application of judicially-created sovereign immunity to political subdivisions and municipalities, the recreational user statutes became applicable to those bodies as well. *Johnson*, 36 Ohio St.3d at 62-63, citing *Enghauser v. Eriksson Engineering Ltd.*, 6 Ohio St.3d 31, 451 N.E.2d 228 (1983) (abolishing the application of judicially-created sovereign immunity to municipalities); *Marrek v. Cleveland Metroparks Bd. of Commrs.*, 9 Ohio St.3d 194, 197, 459 N.E.2d 873 (1984), citing *Schenkolewski v. Cleveland Metroparks Sys.*, 67 Ohio St.2d 31, 426 N.E.2d 784 (1981) (abolishing sovereign immunity for proprietary function of park districts). *See also Pauley v. City of Circleville*, 137 Ohio St.3d 212, 2013-Ohio-4541, 998 N.E.2d 1083, ¶ 15 (premises includes city park), citing *LiCause v. City of Canton*, 42 Ohio St.3d 109, 110-112, 537 N.E.2d 1298 (1989).

{¶21} Therefore, the Supreme Court has instructed courts applying the recreational user statutes to apply "the same standard of liability for both public and private landowners." *Marrek*, 9 Ohio St.3d at 197 (the standard of liability for landowners was "equalized" regardless of whether they were public or private). In *Marrek*, the Court specifically concluded that a "metropark district" fell within the protection of the recreational user statute. *Id.*

{¶22} Appellant recognizes this decision but argues that it is contrary to the plain language in R.C. 1533.18(A) defining premises. Appellant criticizes the *Marrek* Court's statement that the statute was "inartfully drafted," suggesting that the Court added to the statutory definition. However, the Supreme Court later distanced itself from that particular statement. *Johnson*, 36 Ohio St.3d at fn. 3 (clarifying this portion of *Marrek* but maintaining the syllabus law that "a board of commissioners of a park district will be held liable, the same as private corporations and persons, for the negligence of its employees in the performance of the activities."). As reviewed above, the *Johnson* Court explained that "derivative immunity" is enjoyed by public land regardless of the particular language in the statute.

{¶23} In summary, the Supreme Court has set forth its position on public lands being included in the statute's coverage multiple times. *See, e.g., Pauley*, 137 Ohio St.3d 212 at ¶ 15; *LiCause*, 42 Ohio St.3d at 110-112; *Johnson*, 36 Ohio St.3d at 62-63; *Marrek*, 9 Ohio St.3d at 197; *Moss*, 62 Ohio St.2d 138; *McCord*, 54 Ohio St.2d 72. No reason has been espoused to analyze the matter anew. We follow the Ohio Supreme Court's holding on the matter. Therefore, Appellant's first challenge to recreational immunity fails.

{¶24} Appellant's second argument is that the character of the farm is not consistent with the character of premises intended to receive recreational user immunity, citing to R.C. 1533.18(B), which contains the definition of recreational user. There is no dispute that Appellant was a person to whom permission has been granted, without the payment of a fee, to enter upon the land to hike or to engage in other recreational pursuits and that she was walking in grass next to a designated trail west of the bikeway. Appellant suggests that the fact that she was a recreational user and was engaging in a recreational use is not dispositive.

**{¶25}** She points to the holding: "In determining whether a person is a recreational user under R.C. 1533.18(B), the analysis should focus on the character of the property upon which the injury occurs and the type of activities for which the property is held open to the public." *Miller v. City of Dayton*, 42 Ohio St.3d 113, 536 N.E.2d 1294 (1999). She quotes portions of a case we decided involving an injury on a trail in this same park. *Shutrump v. Mill Creek Metropolitan Park District*, 7th Dist. No. 97CA40 (Apr. 2, 1998) (providing the park recreational immunity). For instance, she points out that we found no indication "that the park held the trail open to the public for anything other than hiking or other recreational pursuits." *Id.*

**{¶26}** She urges that the farm property exists for more than just hiking and that the farm is of a different nature and character than the trail involved in *Shutrump*. Since Appellant was in fact walking along (next to) a trail several hundred yards from the farm buildings, she asks that we expand our view to the entire farm property (although not to the entire park system). From this, she urges that the farm's features, or certain buildings at the farm, do not involve recreational pursuits and thus the premises as a whole cannot be said to involve recreational pursuits.

**{¶27}** She also cites this court's statement, "To draw a distinction between persons based on the activity they were engaged in on the property would defeat the purposes of the legislation." *Shutrump*, 7th Dist. No. 97CA40. In that case, however, the plaintiff's argument was that she was not using the trail in Mill Creek Metroparks to enjoy a recreational pursuit but was merely using it as a short-cut to a store. One of the purposes of our statement was to point out that one cannot walk/hike a public trail but then claim that their purpose was not recreational because they had no intent to "hike."

**{¶28}** The definition of recreational user involves a person to whom permission has been granted without a fee to the owner (with certain exceptions) to enter upon premises to hunt, fish, trap, camp, hike, swim, snowmobile, ride an all-purpose or four-wheel drive vehicle, or to engage in other recreational pursuits. R.C. 1533.18(B). This entails an evaluation of what users are granted permission to do upon entry. Accordingly, the *Miller* Court instructed that, when determining whether a person is a recreational user, the analysis should focus on the character of the

property upon which the injury occurs and the type of activities for which the property is held open to the public. *Miller*, 42 Ohio St.3d at 114-115 ("the inquiry should focus on the nature and scope of activity for which the premises are held open to the public").

{¶29} The phrase "other recreational pursuits" is to be broadly construed and includes sledding, boating, playing baseball or softball, and watching a baseball game (and walking to the parking lot from the game is not excluded). *Id.* at 115; *Pauley v. City of Circleville*, 137 Ohio St.3d 212, 2013-Ohio-4541, 998 N.E.2d 1083 (plaintiff rode a sled down dirt mound dumped by park and was paralyzed after hitting a railroad tie sticking out of mound); *LiCause v. City of Canton*, 42 Ohio St.3d 109, 537 N.E.2d 1298 (1989) (plaintiff tripped on cable strung between posts in park parking lot after watching ball game); *Moss*, 62 Ohio St.2d 138 (one plaintiff stepped into a hole after buying gas for her boat at state park, and other plaintiff drowned after renting canoe at state park).

{¶30} Still, the pursuits should be related to "elements such as land, water, trees, grass, and other vegetation." *Miller*, 42 Ohio St.3d at 114. The character of the premises involved in recreational pursuits is envisioned to be related to the "true outdoors" and the pursuits are generally conducted in "wide open spaces" such as parks or wilderness tracts. *Pauley*, 137 Ohio St.3d at ¶ 17. In determining that the character of an enclosed gymnasium was not covered by the statute, the Court pointed out that the recreational immunity statute lies within Title 15 of the Revised Code, which deals with conservation of natural resources. *Id.*, citing *Light v. Ohio University*, 28 Ohio St.3d 66, 28 OBR 165, 502 N.E.2d 611 (1986).

{¶31} In *Miller*, the plaintiff argued that because the baseball/softball field (which includes the diamond, bases, fences, and dugout) was manmade, the activities occurring on it were not recreational pursuits and thus he was not a recreational user. *Miller*, 42 Ohio St.3d 113. The Supreme Court disagreed and concluded that the presence of man-made improvements on a property does not remove the property from statutory protection. *Id.* at 114. The definition of premises includes not only "lands, ways, and waters" but also expressly includes "any buildings and structures thereon." R.C. 1533.18(B). "To qualify for recreational-user immunity,

property need not be completely natural, but its essential character should fit within the intent of the statute." *Miller*, 42 Ohio St.3d at 114. The *Miller* Court added at page 115:

> To consider the question from a different perspective: Are the improvements and man-made structures consistent with the purpose envisioned by the legislature in its grant of immunity? In other words, are the premises (viewed as a whole) those which users enter upon '* * * to hunt, fish, trap, camp, hike, swim, or engage in other recreational pursuits?' * * * If the premises qualify as being open to the public for recreational activity, the statute does not require a distinction to be made between plaintiffs depending upon the activity in which each was engaged at the time of injury. For example, we recognize immunity to the owner of a park (which qualifies as recreational premises), whether the injury is to one who is jogging in the park, tinkering with a model airplane or reading poetry to satisfy a school homework assignment.

{¶32} Here, Appellant does not dispute that she was hiking. She believes the existence of a farm and/or an educational hall on this particular 400 acre parcel of park property eliminates the significance of the fact she was on a park district trail. The park responds that its grounds qualify as recreational premises under the statute. The park urges that the presence of the hall and the farm are irrelevant to the recreational trails being utilized by Appellant.

{¶33} Appellant was on park property which was open free of charge to the public. *See Reed v. Miamisburg*, 96 Ohio App.3d 268, 270, 644 N.E.2d 1094, 1095 (2nd Dist.1993) (recreational immunity where employee removed a pole and left a hole in the ground even when plaintiff was coming from fee-based rental unit in the park where the park itself was open to the public without fee for viewing of a Native American burial mound and exploration of grounds and playgrounds). The educational farm was also open free of charge to the public courtesy of the park district. *See, e.g., Gibson v. Seigly*, 3d Dist. No. 13-88-6 (Feb. 22, 1990) ("Absent a showing that defendant opened his farm and barn to the general public for gratuitous recreational use, we cannot say that plaintiff was a recreational user or that

defendant was entitled to immunity under R.C. 1533.181."). *See also Gray v. Loux*, 1st Dist. No. C-850719 (Aug. 27, 1986) (recreational immunity from child injured on trampoline where farm opened without a fee so participants could enjoy camping, fishing, horseback riding, and a trampoline).

**{¶34}** An anticipated result of the protections provided by the statute was the opening to the public of wide open spaces such as woods and farmer's fields. *See, e.g., Loyer v. Buchholz*, 6th Dist. No. E-87-5 (July 17, 1987) (intent to protect landowners who open rural property for gratuitous public recreational use in order to supplement public land for recreational users), affirmed 38 Ohio St.3d 65, 67, 526 N.E.2d 300, 303 (1988) (rural or urban). *See also Pauley*, 137 Ohio St.3d at ¶ 17. Regardless of the character of any particular building at the farm, Appellant was not injured inside or even near a building.

**{¶35}** The park grounds behind the farm involve the "true outdoors," "wide open space," and "elements such as land, water, trees, grass, and other vegetation." See *Pauley*, 137 Ohio St.3d at ¶ 17; *Miller*, 42 Ohio St.3d at 114. The essential character of the outdoor park property and trails was not changed by the existence of farm buildings.[1]

**{¶36}** Appellant was walking in grass along the "Mindy Henning Memorial Trail" (located to the west of the bikeway, which is also operated by the park) several hundred yards from the farm buildings. The area was a trail expressly open to the public for hiking and walking, among other recreational pursuits. Hiking is specifically listed in R.C. 1533.18(B) as a qualifying recreational pursuit for which a user has been granted permission to enter upon the premises. In accordance, Appellant's second recreational immunity challenge fails.

**{¶37}** Appellant's third argument concerning the recreational user statute is that the application of recreational immunity violates public policy. She believes there should be a judicially-created exception to the statute where the defendant has actual notice of an unnatural, manmade condition. Contrary to Appellant's suggestion,

---

[1] We note that Appellant attached documents to her opposition to summary judgment showing the farm and 268 acres is leased from the county, but the remaining 139 acres is owned by the park.

presumed knowledge of a clay tile drainage system does not equate to knowledge of a hole, and there is no indication the park created the condition (the tile system is thought to be from the 1930's or 1940's before the park owned the land). Regardless, the Supreme Court has rejected arguments that there should be exceptions to recreational immunity based upon the landowner's creation of the hazard.

{¶38} In *Pauley*, a city park dumped piles of dirt in the park after they ran out of room at a storage facility. The park used the dirt for backfilling or reseeding at the park or around the city. A minor, who was sledding on one of the piles, hit a railroad tie sticking out of the mound and was paralyzed by the impact. The plaintiff pointed out that the city received the dirt from a commercial construction site. The plaintiff argued that the recreational user statute does not apply when the owner of the premises creates a hazardous condition on the premises.

{¶39} The Fourth District stated: "Appellants request, in essence, that we read an exception into the statute when none exists." *Pauley v. City of Circleville*, 4th Dist. No. 10CA31, 2012-Ohio-2378, 971 N.E.2d 410, ¶ 21 (4th Dist.). The court pointed out that the Eighth District similarly refused to create an exception where a defendant affirmatively created a dangerous condition. *Id.* at ¶ 21, citing *Milliff v. Cleveland Metroparks Sys.*, 8th Dist. No. 52315 (June 4, 1987) (plaintiff collided with a rock barrier that was used to block access to a washed out area of the park) and *Erbs v. Cleveland Metroparks Sys.*, 8th Dist. No. 53247 (Dec. 24, 1987).

{¶40} The Ohio Supreme Court affirmed the Fourth District's decision. *Pauley*, 137 Ohio St.3d 212 at ¶ 39. The Court specified that the premises owner is not liable for injuries sustained during recreational use "even if the property owner affirmatively created a dangerous condition." *Id.* at ¶ 21, quoting *Erbs*, 8th Dist. No. 53247, citing *Milliff*, 8th Dist. No. 52315. "The determination of whether R.C. 1533.181 applies depends not on the property owner's actions, but on whether the person using the property qualifies as a recreational user." *Id.*

{¶41} The Court noted that the result may seem harsh to some, but R.C. 1533.181(A)(1) specifically states that an owner does not owe "any duty" to a recreational user to keep the premises safe for entry. Id. at ¶ 21, 38. "Creating an

exception to this immunity is a policy decision that comes within the purview of the General Assembly, not the courts." *Id.* at ¶ 38.

{¶42} In accordance, Appellant's third challenge to the recreational immunity is without merit. Appellant's alternative argument, that the park is not entitled to political subdivision immunity, is moot. Summary judgment is affirmed on the basis that the park was properly granted recreational immunity in this case.

Donofrio, P.J., concurs.

Waite, J., concurs.