[Cite as *Farris v. Mill Creek Metro. Park Dist.*, 2023-Ohio-1214.]

IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

George Farris,

Plaintiff-Appellee,

v.

Mill Creek Metropolitan Park District, et al.,

Defendants-Appellants.

_____

**OPINION AND JUDGMENT ENTRY**
Case No. 22MA00008

_____

Appeal from the Court of Common Pleas of
      Mahoning County, Ohio
      Case No. 20-CV-01010

BEFORE:    Judge Jason P. Smith (Sitting by Assignment)
              Judge Peter B. Abele (Sitting by Assignment)
              Judge Michael D. Hess (Sitting by Assignment)

_____

**JUDGMENT REVERSED AND CAUSE REMANDED**

_____

Gregory A. Beck
Andrea K. Ziarko
Baker/Dublikar
400 South Main Street
North Canton, Ohio 44720
*Counsel for Appellants*

Nicholas Cerni
755 Boardman-Canfield Road
Suite M-1
Youngstown, Ohio 44512
*Counsel for Appellee*

**RELEASED : 4/13/2023**

{¶1} Appellants, Mill Creek Metropolitan Park District, et al. (hereinafter "Mill Creek"), appeal the judgment of the Mahoning County Court of Common Pleas denying its motion for summary judgment. On appeal, Mill Creek contends 1) that the trial court was incorrect in holding that the recreational user immunity statute does not apply in this case; and 2) that the trial court incorrectly held that it was not entitled to statutory immunity pursuant to Chapter 2744 of the Ohio Revised Code. Because we find merit to Mill Creek's first assignment of error, it is sustained. Accordingly, the trial court's judgment denying Mill Creek summary judgment on the issue of whether the recreational immunity defense applies is reversed and this matter is remanded to the trial court with instructions for the trial court to issue summary judgment in favor of Mill Creek. Furthermore, because Mill Creek's alternative argument that it is entitled to political subdivision immunity has been rendered moot by our disposition of its first assignment of error, we need not address it.

FACTS

{¶2} On June 22, 2019, Farris drove his vehicle to Mill Creek Park for the purpose of meeting his brother for lunch at the Rose Garden Café, which is a privately-leased, for-profit restaurant located within the park. Upon arrival at the park, Farris parked his car and decided to ride his bicycle along Chestnut Hill

Drive the rest of the way to the restaurant. Chestnut Hill Drive is an unmarked, two-lane roadway, with a posted speed limit of 20-miles-per-hour. The roadway is completely contained within the park and is maintained by the park. It connects with Canfield Road/State Route 62 on the southern end and provides access to various park attractions and parking lots within the park. Chestnut Hill Drive was designed for multipurpose use by vehicles, bikers, hikers, walkers, joggers, and other recreational users.

{¶3} While bicycling on Chestnut Hill Drive, Farris hit a pothole which caused him to flip over his bicycle. Farris explained during his deposition that although he was watching for potholes as he was riding, the pothole was concealed by the shadows from nearby trees. He described the pothole as being "ridiculous" in size and "a yard wide." The fall resulted in Farris being rendered unconscious for a period of time. He was then transported to the hospital by ambulance, where he was admitted for injuries that included, but were not limited to, broken ribs and a hemothorax.

{¶4} Farris filed a complaint on June 18, 2020, alleging Mill Creek was negligent and had breached a fiduciary duty owed to him. More specifically, Farris alleged that Mill Creek was negligent for "failing to remedy or warn of the cavernous pothole in the middle of the two-lane road" and that Mill Creek "exacerbated the dangerous condition with trees that caused shade to conceal the

pothole." Farris also alleged that Mill Creek had breached its fiduciary duty "by failing to utilize public funds and execute its function to prevent the existence of dangerous conditions on Park grounds and its failure to implement policies to remedy or warn of the dangerous pothole in the middle of the two-lane road." Mill Creek filed its answer on July 8, 2020, asserting that it was immune from liability under R.C. 2744.01 et seq. It also asserted that Farris' claims were barred by the recreational user immunity statutes, found in R.C. 1533.18 and 1533.181.

{¶5} Mill Creek filed a motion for summary judgment on May 28, 2021, arguing it was immune from liability under R.C. 1533.181(A)(1) and (3). It alternatively argued that it was immune from liability under the Political Subdivision Tort Liability Act, as codified in Chapter 2744 of the Ohio Revised Code. Mill Creek also argued that it had no actual or constructive knowledge of the existence of the pothole and further argued that the pothole was an open and obvious danger. The record before us consists of the pleadings, motions and exhibits attached thereto, as well as the deposition transcript of Farris and the deposition transcript and answers to interrogatories of Aaron Young, Mill Creek's executive director.

{¶6} The trial court denied Mill Creek's motion for summary judgment on January 14, 2022. The court found that Mill Creek was not entitled to judgment as a matter of law on the issues of immunity under either the recreational user

immunity statute or the political subdivision liability act.  The trial court further found that a genuine issue of material fact existed as to whether the hazard at issue was open and obvious.   It is from this judgment that Mill Creek now appeals, setting forth two assignments of error for our review.

## ASSIGNMENTS OF ERROR

I.      THE TRIAL COURT WAS INCORRECT IN HOLDING THAT THE RECREATIONAL USER IMMUNITY STATUTE DOES NOT APPLY TO THIS CASE.

II.     THE TRIAL COURT INCORRECTLY HELD THAT APPELLANTS ARE NOT ENTITLED TO STATUTORY IMMUNITY PURSUANT TO CHAPTER 2744 OF THE REVISED CODE.

## ASSIGNMENT OF ERROR I

{¶7} In its first assignment of error, Mill Creek contends that the trial court was incorrect in holding the recreational user immunity statute does not apply to this case.  Mill Creek argues that the roadway at issue herein constitutes a "premises" as defined under the recreational user immunity statute.  It further argues that because Farris was using the roadway while participating in a recreational activity, the trial court's decision determining that the recreational user immunity statute did not apply was incorrect.  Farris, however, contends that the trial court correctly found that the recreational user immunity statute did not apply to shield Mill Creek from liability in this case.  He argues that roadways are not "premises" as defined in R.C. 1533.18 and that he was traveling on the road not for

recreation, but in order to meet his brother at a restaurant located within the park. He notes that the restaurant is a for-profit entity which generates revenue for Mill Creek.  Thus, Farris argues he was a business invitee to which Mill Creek owed "a duty to exercise ordinary care to maintain its premises in a reasonably safe condition * * *."

Standard of Review

{¶8} "Summary judgment can be granted when there remains no genuine issue of material fact and when reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law."  *Moskalik v. Mill Creek Metroparks*, 2015-Ohio-4826, 50 N.E.3d 946, ¶ 13 (2015), citing Civ.R. 56(C). "In determining whether there exists a genuine issue of material fact to be resolved at trial, the court is to consider the evidence and all reasonable inferences to be drawn from that evidence in the light most favorable to the non-movant." *Moskalik* at ¶ 13, citing *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 11.  Thus, "[d]oubts are to be resolved in favor of the non-movant." *Moskalik* at ¶ 13, citing *Leibreich v. A.J. Refrig., Inc.*, 67 Ohio St.3d 266, 269, 617 N.E.2d 1068 (1993).  As explained in *Moskalik*, "[a] court 'may not weigh the proof or choose among reasonable inferences.' " *Moskalik* at ¶ 13, quoting *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 121, 18 O.O.3d 354, 413 N.E.2d 1187 (1980).

{¶9} This Court further explained as follows in *Moskalik*:

> Civ.R. 56 must be construed in a manner that balances the right
> of the non-movant to have a jury decide claims and defenses that
> are adequately based in fact with the right of the movant to
> demonstrate, prior to trial, that the claims and defenses have no
> factual basis.  *Byrd v. Smith*, 110 Ohio St.3d 24, 26-27, 2006-
> Ohio-3455, 850 N.E.2d 47, ¶ 11, citing *Celotex Corp. v. Catrett*,
> 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The
> movant has the initial burden to show that no genuine issue of
> material fact exists.  *Byrd*, 110 Ohio St.3d 24, 850 N.E.2d 47, at
> ¶ 10, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 662
> N.E.2d 264 (1996).  The nonmoving party then has a reciprocal
> burden.  *Id.*  The non-movant's response, by affidavit or as
> otherwise provided in Civ.R. 56, must set forth specific facts
> showing that there is a genuine issue for trial and may not rest
> upon mere allegations or denials in the pleadings.  Civ.R. 56(E).

*Moskalik* at ¶ 14.

{¶10} " 'The material issues of each case are identified by substantive law[]' " and " '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' " *Moskalik* at ¶ 15, quoting *Byrd, supra*, at ¶ 12 and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  "We consider the propriety of granting summary judgment under a de novo standard of review." *Moskalik* at ¶ 15, citing *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

Recreational User Immunity Statute

{¶11} R.C. 1533.181 is entitled "Exemption from liability to recreational users" and is commonly referred to as the recreational user immunity statute. "The intent of the legislation was 'to encourage owners of premises suitable for recreational pursuits to open their land to public use without worry of liability.' " *Moskalik* at ¶ 16, quoting *Moss v. Ohio Dept. of Natural Resources*, 62 Ohio St.2d 138, 142, 404 N.E.2d 742 (1980). The statute provides as follows:

> (A) No owner, lessee, or occupant of premises:
>
> (1) Owes any duty to a recreational user to keep the premises safe for entry or use;
>
> (2) Extends any assurance to a recreational user, through the act of giving permission, that the premises are safe for entry or use;
>
> (3) Assumes responsibility for or incurs liability for any injury to person or property caused by any act of a recreational user.
>
> (B) Division (A) of this section applies to the owner, lessee, or occupant of privately owned, nonresidential premises, whether or not the premises are kept open for public use and whether or not the owner, lessee, or occupant denies entry to certain individuals.

{¶12} R.C. 1533.18 contains definitions of terms contained in the recreational user immunity statute, including definitions for "recreational user" and "premises." The statute provides in pertinent part as follows:

> (A) "Premises" means all privately owned lands, ways, and waters, and any buildings and structures thereon, and all privately owned and state-owned lands, ways, and waters leased to a private person, firm, or organization, including any buildings and structures thereon.

(B) "Recreational user" means a person to whom permission has been granted, without the payment of a fee or consideration to the owner, lessee, or occupant of premises, other than a fee or consideration paid to the state or any agency of the state, or a lease payment or fee paid to the owner of privately owned lands, to enter upon premises to hunt, fish, trap, camp, hike, or swim, or to operate a snowmobile, all-purpose vehicle, or four-wheel drive motor vehicle, or to engage in other recreational pursuits.

{¶13} R.C. 1533.18 defines "premises" as "privately owned lands, ways, and waters * * *[.]" However, the Supreme Court of Ohio "has recognized that [while] a political subdivision does not have 'direct' statutory immunity under the recreational user statutes[,]" it has " 'derivative' immunity from tort liability to recreational users of public land." *Moskalik* at ¶ 18, quoting *Johnson v. Village of New London*, 36 Ohio St.3d 60, 62, 521 N.E.2d 793 (1988). Thus, the Supreme Court of Ohio "has instructed courts applying the recreational user statutes to apply 'the same standard of liability for both public and private landowners.' " *Moskalik* at ¶ 21, quoting *Marrek v. Cleveland Metroparks Bd. of Commrs.*, 9 Ohio St.3d 194, 197, 459 N.E.2d 873 (1984). Moreover, in *Marrek*, the Court expressly concluded that a "metropark district" was entitled to immunity under the recreational user statute. *Id.* Furthermore, this Court has observed that "[t]he Supreme Court has held that park districts like [Mill Creek] enjoy the immunity provided by R.C. 1533.181." *Shutrump v. Mill Creek Metropolitan Park District*, 7th Dist. Mahoning No. 97C.A.40, 1998 WL 158864, *3.

Legal Analysis

{¶14} The record before us indicates that Mill Creek first sought summary judgment on the issue of immunity under R.C. 1533.181, the recreational user immunity statute. Mill Creek alternatively sought summary judgment on the issue of immunity under Chapter 2744 of the Ohio Revised Code, known as the Political Subdivision Tort Liability Act. The trial court denied Mill Creek's motion for summary judgment, despite Mill Creek's assertion that it was entitled to immunity from liability under two separate statutes. With respect to the issue of immunity under the recreational user liability statute, the trial court found that because the accident occurred on a roadway, the matter was different from other cases involving accidents that occurred in parks or other recreational property. More specifically, the trial court reasoned that because the roadway at issue was open to other motorists for travel and was not limited to recreational purposes, the character of the property was not recreational and immunity did not apply. Thus, at issue under Mill Creek's first assignment of error is whether the trial court erred in denying its motion for summary judgment that was based upon its assertion that it was entitled to immunity under the recreational user liability statute.

{¶15} Mill Creek's argument in support of the application of the recreational user liability immunity statute is essentially two-fold. First, Mill Creek argues that Farris was riding his bicycle when the accident occurred, which it argues is an

activity that has been held to constitute a recreational activity, and that Farris did not pay a fee to enter the park to ride his bicycle.[1]  Importantly, however, Mill Creek contends that the determination of whether Farris was a recreational user does not depend on the specific activity he was engaged in at the time of the accident, but rather it depends on the "character of the premises" where the accident occurred.

{¶16} Second, Mill Creek argues that contrary to the trial court's holding, it has been expressly held that a roadway within a park constitutes "premises" for purposes of R.C. 1533.18.  Mill Creek points out that the roadway where the accident occurred, Chestnut Hill Drive, is a "Park District roadway/trail open to recreational users" which "is located entirely within the Park District, and therefore falls within the definition of 'premises' under R.C. 1533.181(A)."  Mill Creek further contends that although the roadway at issue was a manmade improvement, it did not change the character of the property so as to remove immunity.

{¶17} Farris contends, on the other hand, that while the recreational user immunity statute may apply to hike and bike trails contained within the Park District, such immunity does not apply in this case because the accident occurred on Chestnut Hill Drive, which Farris argues is a "two-lane thoroughfare" treated by

---

[1]"The phrase 'other recreational pursuits' is to be construed broadly."  *Moskalik, supra*, at ¶ 29.  *See also Milliff, supra*, at \*3 ("We conclude that a bicycle ride is a recreational pursuit within the meaning of R.C. 1533.18(B)").

the Park District as a roadway for purposes of ODOT funding. Farris further argues that the recreational user immunity statute does not apply to this case because he was using the roadway at issue to travel to the Rose Garden Café located in the park, which Farris states is a "profit generating business" of Mill Creek. Nonetheless, for the following reasons we agree with Mill Creek and therefore find that the trial court erred in denying Mill Creek's motion for summary judgment on the issue of immunity under R.C. 1533.181.

{¶18} As set forth above, the trial court denied Mill Creek's motion for summary judgment claiming it was immune from liability under the recreational user liability statute. In reaching its decision, the trial court relied on the reasoning of the Tenth District Court of Appeals in *Vinar v. Bexley*, 142 Ohio App.3d 341, 755 N.E.2d 922 (10th Dist. 2001). *Vinar* involved a bicycle accident that occurred on a roadway maintained by the city that was located in a city park. *Vinar* at 342. Vinar fell from his bicycle when he encountered a speed bump that had been placed in the roadway by the city. *Id.* The trial court granted summary judgment in favor of the city, finding that the city was "entitled to judgment as a matter of law on the basis of recreational user immunity." *Id.* at 343.

{¶19} On appeal, Vinar argued "that R.C. 1533.181 was inapplicable to the facts of the case, which involved a municipal roadway running through a recreational area. *Id.* In analyzing the character of the property at issue, the *Vinar*

court noted that the roadway was "maintained by the city," was "running through a city park," and was "paved, marked for two-way traffic, ha[d] signage for speed limits, and [was] open to both automobile and bicycle traffic." *Id.* at 345. The trial court also noted that the roadway was "presumably * * * available to motorists (and bicyclists) for travel not related to recreational use." *Id.* Relying on cases from Louisiana and Utah, the appellate court reversed the trial court and found that immunity did not apply to the accident because it occurred on a roadway, which the court described as a "thoroughfare through the park" that was "available to the general public for travel by vehicles and bicycles" for nonrecreational purposes. *Id.*

{¶20} Although the voting judges in *Vinar* concurred, they did not concur in judgment and opinion. Judge Lazarus issued a concurring decision asserting that a genuine issue of fact remained as to whether "the roadway was designed for use as a public thoroughfare, as represented during oral argument, or rather simply as a means of providing access for the public to visit the [Jeffrey mansion] or use the park for recreational purposes." *Id.* at 346-347. Thus, the concurring judge believed a genuine issue of material fact existed regarding the "character of the property." *Id.* at 347.

{¶21} Although the *Vinar* court relied on authority from other districts in reaching its decision, it ignored prior authority in Ohio expressly holding that

roadways constitute "premises" for purposes of R.C. 1533.18(A). *See Milliff v. Cleveland Metroparks System*, 8th Dist. Cuyahoga No. 52315, 1987 WL 11969, *3 (1987). *Milliff* was bicycling on a roadway located in the Cleveland Metroparks System and "collided with a rock barrier that was used to block access to a washed out area" after he "failed to notice at least one posted warning sign that the road ahead was closed." *Id.* at *1. The trial court granted summary judgment in favor of the metropark based upon R.C. 1533.181. *Id.* On appeal, Milliff argued "that R.C. 1533.181 has no application to Public Roadways as such are not Recreational Premises within the terms of the Statute." *Id.* The appellate court rejected Milliff's argument and not only found that Milliff was a recreational user, but it also expressly found that the term "way," as contained in the definition of "premises" in R.C. 1533.18(A), "specifically includes by definition 'road.'" *Id.* at *3. The *Milliff* court further concluded "that the statute is clear on its face and undoubtedly includes roadway as a 'premise' within the meaning of R.C. 1533.18." *Id.*

{¶22} In reaching its holding, the *Milliff* court relied upon the definition of "way" contained in the Webster's Second New International Dictionary, 1942 Edition, which defined "way" as "a passage, road, street, [track] or path of any

kind."  *Id.*[2]  The current definition of "way" as it appears in the Merriam-Webster online dictionary is "a thoroughfare for travel or transportation from place to place."  The current definition of the word "thoroughfare" in the Merriam-Webster online dictionary is "a street open at both ends."

{¶23} Although Milliff was decided in 1987, the Eighth District Court of Appeals reaffirmed this reasoning in *Finley v. Cleveland Metroparks*, 2010-Ohio-4013, 937 N.E.2d 645 (8th Dist. 2010), which involved a motorcycle wreck caused by a fallen tree on a public roadway running through the park.  More specifically, in reaching its decision the *Finley* court noted that it "had held that the statute includes a roadway within the Metroparks system as 'premises' within the meaning of R.C. 1533.18."  *Finley* at ¶ 49, citing *Milliff, supra*.  The *Finley* Court ultimately concluded that the park district was immune from liability pursuant to the recreational user liability immunity statute.  *Finley* at ¶ 54.

{¶24} Aaron Young, Mill Creek's executive director, was deposed by Farris and the transcript of Young's deposition is part of the record on appeal.  During the deposition, counsel for Farris repeatedly referred to Chestnut Hill Drive as a "thoroughfare."[3]  There is evidence in the record that Chestnut Hill Drive connects

---

[2] The *Milliff* court mistakenly stated that the term "way" was defined in part as a "truck" in the Webster's Second New International Dictionary, 1942 Edition.  The word "truck" should have appeared as "track" in the quoted definition.

[3] Young actually disputed that the roadway constituted a "thoroughfare," explaining that he didn't consider it such because it was not marked for two-way traffic.

with Canfield Road, or State Route 62, on its southern end. There was no evidence introduced into the record regarding whether Chestnut Hill Drive connects with another roadway on its northern end, however, Young referred to Chestnut Hill Drive as a paved service road and stated that although it can accommodate both northbound and southbound traffic, it is actually closed by the park to all forms of travel in the winter in order to alleviate the amount of snow plowing that must be done by the park. Young further testified that while the roadway at issue benefits from the ODOT Park District Road Improvement Fund and although the ODOT Ohio Parks and Recreation Association Biennium Fund assists with the purchase of material, including asphalt for paving, all maintenance, patching and paving is performed by park district staff. Young also testified that maintenance of all vegetation, including trees, is a metroparks function.[4]

{¶25} A review of the record demonstrates that Chestnut Hill Drive is entirely located within the park district, that it serves as a route to various attractions and parking lots within the park, including the Rose Garden Café, and the roadway is maintained by the park district. It is also clear that the roadway is capable of handling two-way traffic, even if not marked for such, and that vehicles are permitted to travel on the road. According to Young's admissions, "Chestnut

---

[4] In his complaint, Farris not only alleged that Mill Creek "breached their duty by failing to remedy or warn of the cavernous pothole in the middle of the two-lane road[,]" but he also alleged that Mill Creek "exacerbated the dangerous condition with trees that caused shade to conceal the pothole."

Hill Drive is an unmarked, paved surface designed for multipurpose use by vehicles, bikers, hikers, walkers, joggers, and other recreational users."

{¶26} Based upon the record before us, we disagree with the trial court to the extent it applied the reasoning set forth in *Vinar* to remove Mill Creek's immunity from liability for injuries sustained by a bicyclist in an accident that occurred on a park district multi-use roadway located entirely within the park, which is held open to the public for recreational use without a fee, simply because the park district does not prohibit use of the roadway by the general motoring public. Although the *Vinar* decision is supported by authority from two other states, holdings from Louisiana and Utah are not binding upon this Court, and neither is *Vinar*, which was issued by the Tenth District. Upon de novo review, we find the reasoning set forth in *Milliff, supra*, to be sound, logical and more persuasive than the reasoning in *Vinar*. We are further persuaded by the reasoning set forth in *Brinkman v. City of Toledo*, which involved a child who was injured while playing football on a small piece of land owned and maintained by the city that was actually part of the street right-of-way. *Brinkman*, 611 N.E.2d 380, 381, 81 Ohio App.3d 429 (6th Dist. 1992). The *Brinkman* court observed that although *city streets* and sidewalks are commonly used for recreational purposes, "the essential character of streets is not recreational[,]" unlike *city parks*, which are "held out to the public for recreational purposes." *Id.* at 383-384. In the case

presently before us, we have a mixture of factors. Here, although the accident at issue occurred on a roadway, that roadway is a park district roadway contained completely within the park that is serviced and maintained by park staff. Although it was designed as a multipurpose roadway for recreational use and is held open to the public for that purpose, it is also open to the general public for travel.

{¶27} The *Brinkman* court ultimately determined that genuine issues of material fact existed as to whether the property at issue was held out by the city as being used for recreational purposes. *Id.* at 383. In so holding, the court observed that "[m]unicipal property is often used for recreational purposes without becoming recreational premises." *Id.* We believe the inverse is true as well. Property held open to the public for recreational uses may often be used by individuals for non-recreational purposes, but that does not necessarily change the recreational character of the property, nor should it remove the immunity afforded to owners of property that are held open to the public free of charge for recreational purposes.

{¶28} Here, Farris claims that because he was simply traveling on his bicycle to a for-profit restaurant located within the park, he was not engaged in a recreational activity. Instead, he argues that he was a business invitee to which Mill Creek owed a duty of care. Interestingly, although it is not mentioned by either party on appeal, Farris stated during his deposition that he actually drove his

vehicle to the park, parked it in a parking lot, took his bicycle out of his car, and from there began riding his bicycle on Chestnut Hill Drive. He explained during his deposition that while he normally rides his bicycle on the hike and bike trails located within the park, he decided to take a different route to the restaurant because he was running ahead of schedule. We find this description of Farris' activity to be more akin to recreation than non-recreational travel.

{¶29} Furthermore, there is a framework for determining whether an individual is a recreational user, which this Court has explained in *Shutrump v. Mill Creek Metropolitan Park District*, 7th Dist. Mahoning No. 97 C.A. 40, 1998 WL 158864. Shutrump was injured when the trail she was walking along crumbled beneath her and caused her to fall over the trail's edge. *Shutrump* at *1. Shutrump argued that she was not a recreational user because she was simply using the trail as a shortcut to a convenience store and thus, the immunity defense should fail. *Id.* at *2. Confronted with the question of whether Shutrump was a recreational user, we explained as follows regarding the analysis for determining whether an individual qualifies as a recreational user:

> The first syllabus in *Miller v. City of Dayton* (1989), 42 Ohio
> St.3d 113, 537 N.E.2d 1294, states:
>
> "In determining whether a person is a recreational user under
> R .C. 1533.18(B), the analysis should focus on the character of
> the property upon which the injury occurs and the type of
> activities for which the property is held open to the public."

*Shutrump* at *2.

{¶30} We then went on to explain as follows:

The Supreme Court also noted that it has broadly construed the phrase "other recreational pursuits." *Id.*, at 115, 537 N.E.2d 1294. Also, the Supreme Court stated that:

"[t]he existence of statutory immunity does not depend upon the specific activity pursued by the plaintiff at the time of plaintiff's injury. Rather, the inquiry should focus on the nature and scope of activity for which the premises are held open to the public. The goal is to determine the character of the premises. If the premises qualify as being open to the public for recreational activity, the statute does not require a distinction to be made between plaintiffs depending upon the activity in which each was engaged at the time of injury."

*Id.*

{¶31} In *Shutrump*, this Court determined that the rationale set forth in *Miller* was consistent with the purpose and policy behind Ohio's recreational user statute and "that to draw a distinction between persons based on the activity they were engaged in on the property would defeat the purpose of the legislation[]" because "[t]he owners of recreational property, including parks, would be exposed to liability based not on the purpose for which the park is held open to the public, but based on each individual's purpose for using the property." *Id.* We further reasoned that "[i]f the test was activity based, the owners of such premises would have no reasonable way of ensuring their immunity." *Id.* at *3. Thus, we determined that "[t]he fact that appellant was using the trail as a shortcut is

irrelevant." *Id.* Further, and importantly, we found that "park districts like [Mill Creek] enjoy the immunity provided by R.C. 1533.181[]" and that "there is nothing before us that indicates that the park held the trail open to the public for anything other than hiking or other recreational pursuits." *Id.* Although Farris argues, and the trial court found, that because Mill Creek permitted vehicular traffic it was not entitled to immunity, the *Finley* court observed that " 'recreation involving a motor vehicle does not enjoy an exemption from the scope of the recreational immunity statute.' " *Finley* at ¶ 53, quoting *Price v. Village of New Madison*, 2d Dist. Darke No. 1348. 1994 WL 587548, *5 (reasoning that "[o]ne may engage in recreation and travel at the same time and the mere fact of travelling on city streets does not necessarily terminate recreation").

{¶32} Further, as explained in *Price* at *2:

A recreational user is a person to whom permission has been granted, without the payment of a fee or consideration to the owner, lessee, or occupant of the premises * * * to enter upon the premises to * * * engage in other recreational pursuits. R.C. 1533.18(B).

The kind of premises appropriate for recreational immunity generally includes fields and recreation areas on open land. The presence of improvements on a property does not remove the property from statutory protection, as "premises," as defined in R.C. 1533.18(A), "means all * * * ways, waters, and any buildings and structures thereon." *Miller, supra*, at 114. Statutory immunity applies if the characteristics of the premises, viewed as a whole, are consistent with the purpose of use envisioned by the legislature in its grant of statutory immunity, and the question is whether users use the premises to "hunt, fish,

trap, camp, hike, swim, or engage in other recreational pursuits."
*Miller, supra*, at 115.

Expanded reasoning as to what constitutes "premises" under the statute, as well as

what does or does not change the "character of the property" is set forth in *Miller*

*v. City of Dayton* as follows:

> Generally speaking, recreational premises include elements such
> as land, water, trees, grass, and other vegetation. But recreational
> premises will often have such features as walks, fences and other
> improvements. The significant query is whether such
> improvements change the character of the premises and put the
> property outside the protection of the recreational-user statute.
> To consider the question from a different perspective: Are the
> improvements and man-made structures consistent with the
> purpose envisioned by the legislature in its grant of immunity?
> In other words, are the premises (viewed as a whole) those which
> users enter upon " * * * to hunt, fish, trap, camp, hike, swim, or
> engage in other recreational pursuits?"

*Miller* at 114-115. *See also Pauley v. City of Circleville*, 2012-Ohio-2378, 971

N.E.2d 410, ¶ 25 (4th Dist. 2012) (determining that the city's storage of mounds of

excess topsoil, which included a concealed railroad tie, on the grounds of city park

did not sufficiently change the essential character of park so as to remove

immunity from liability for serious injuries sustained by a sledder at the park).[5]

{¶33} Here, we cannot conclude that the existence of a roadway within the

park system changed the character of the property so as to remove the property

---

[5] The *Pauley* court also observed that courts have rejected arguments that the recreational user statutes did not protect defendants from liability even when the defendant affirmatively created a dangerous condition on the premises. *Pauley* at ¶ 21, citing *Milliff, supra*, at *3.

from the statutory definition of "premises" for purposes of immunity from recreational user liability. Unlike the roadway in *Vinar*, the roadway at issue here was owned and maintained by Mill Creek. Further, as discussed above, although it was apparently used by the general public at times for general travel, Mill Creek held its property open to the public for recreational use and did so without charging a fee. At this juncture, we take the opportunity to note that some cases, in our view, seem to apply too narrow of an analysis to the question of whether certain property constitutes "premises" for purposes of R.C. 1533.18. Rather than determining whether the roadway itself constitutes "premises," we believe the correct analysis should be whether the character of the property, the park itself, constitutes "premises" under R.C. 1533.18 and whether the addition of the roadway, which is obviously a man-made improvement, changed the character of the property as a whole so as to remove the immunity afforded by R.C. 1533.18. *See generally Moskalik, supra*, at ¶ 35 (reasoning that "[t]he essential character of the outdoor park property and trails was not changed by the existence of farm buildings").

{¶34} The roadway at issue here, although connected at one end to a public road, was completely contained within the park system and provided access to park attractions and parking lots. Furthermore, Farris was engaged in the activity of bicycling when he was injured. As set forth above, bicycling has been held to

constitute a recreational activity. Despite Farris' argument that he was merely traveling on his bicycle to get to a restaurant, the individual intent of a defendant when conducting the activity in question is irrelevant to the question of whether one can be classified as a recreational user, especially if the activity is, by outward appearance, a recreational activity. *See Finley, supra*, at ¶ 53. In *Finley*, the court rejected the argument "that the use of the road was recreational because they were headed home from their picnic, which is akin to a motorist using [the road] to commute to and from work"). *Finley* at ¶ 53. In reaching its decision, the *Finley* court relied on the reasoning of *Price, supra*, which concluded that "a recreational use does not end its character as recreational merely because the user is returning from the recreational activity, especially if the user's method of travel is indistinguishable in outward appearance from the recreational activity").

{¶35} In addition to the reasoning set forth in *Milliff*, *Finley*, *Shutrump*, and *Price*, *supra*, we believe our reasoning is further bolstered by the reasoning set forth in *Zachel v. Mahaney*, 6th Dist. Lucas No. L-89-187, 1990 WL 97668, and *Stone v. Northmont City Schools*, 2022-Ohio-1116, 187 N.E.3d 54. In *Zachel*, a lawsuit was filed against a board of education after an individual was injured while riding a motorcycle/dirt bike on what was described as a two-lane "service road" on the school grounds. *Zachel* at *1. The accident occurred at the intersection of two roadways where a "stand of evergreen trees" was located behind a fence

approximately eight to twelve feet from the edge of a curve in the roadway. *Id.*

Zachel argued that the school was negligent and had failed to keep a public road

free from nuisance by allowing trees to grow which prevented drivers from being

able to see approaching vehicles. *Id.* Of relevance herein, Zachel also claimed that

there was no immunity from liability for accidents occurring on roadways, arguing

that it was not the intent of the legislature to extend the recreational user statute to

accidents occurring on roadways. *Id.* at *2. In reaching its decision, the court

noted that the roadways at issue were often used by the public, including bicycle

riders. The court ultimately determined that the presence of manmade

improvements did not remove immunity, noting that recreational premises usually

include such features as walks, fences, and other improvements. *Id.* at *5. Finding

that the essential character of the property, as a whole, was held open to the public

without a fee for recreational purposes, the court found that recreational immunity

applied. *Id.* at *6. The court further found that it need not consider Zachel's

alternative argument regarding political subdivision tort liability. *Id.*

{¶36} In *Stone v. Northmont City Schools, supra*, a bicycle rider was injured

when he ran into a rope that had been strung across a bike trail by a school

employee/coach in preparation for a cross country meet that was to be held the

next day. *Stone* at ¶ 2, 19. Stone argued that once the rope was installed to block

the trail, the trail was closed to the public and the "essential character" of the

premises changed so as to render R.C. 1533.181(A) inapplicable. *Id.* at ¶ 17. Stone also argued that the trail, at that point, "went from a free public trail * * * to a private race where the school charges the patrons a fee." *Id.* at ¶ 18. Stone asserted that his accident occurred as a result of the negligent actions of the school employee, "and not a condition of the premises." *Id.* at ¶ 19. However, the *Stone* court ultimately found that at the time the rope was installed, the rope became a "condition of the premises" and that "consistent jurisprudence precluding liability pursuant to R.C. 1533.181(A)(1) 'involves injuries arising from the condition of the premises.' " *Stone* at ¶ 38-39, quoting *Combs v. Ohio Dept. of Natural Resources, Div. of Parks*, 146 Ohio St.3d 271, 2016-Ohio-1565, 55 N.E.3d 1073 (which involved a park user sustaining an injury from a rock that was thrown from a lawnmower being operated by a park employee). The injury that occurred in *Combs* did not involve a condition of the premises, but rather it occurred as a result of the negligence of a park worker who mowed over loose stones. *Combs* at ¶ 20. Here, it can also be said that Farris' injury was caused by a condition of the premises (pothole/shade from trees), rather than negligence by the park or its employees. As stated in *Stone* and as set forth above, the recreational user statute precludes liability for injuries that occur as a result of the condition of the premises. *See Stone* ¶ 32, citing *Combs* at ¶ 16.

{¶37} Although we believe that *Milliff, Finley, Shutrump, Price, Zachel*, and *Stone* make clear that roadways may constitute "premises" for purposes of R.C. 1533.181(A)(1) and that the existence of a roadway within a park that is open to non-recreational vehicular travel does not necessarily alter the essential character of a park, we are mindful of a problematic statement made by the Supreme Court of Ohio in *Pauley v. Circleville*, 137 Ohio St.3d 212, 2013-Ohio-4541, 998 N.E.2d 1083. In *Pauley*, the Court accepted a discretionary appeal on a single proposition of law as follows: "Recreational user immunity does not extend to man-made hazards upon real property that do not further or maintain its recreational value." *Id.* at ¶ 1. The *Pauley* case did not involve an injury occurring on a roadway, instead it involved a sledding accident that occurred in a city park. *Id.* at ¶ 4-6. The city had been offered excess dirt from a nearby construction project and chose to store mounds of dirt at the city park. *Id.* Pauley was injured when he struck a railroad tie that was embedded in one of the mounds of dirt. *Id.* When discussing the analysis to be used in considering the "essential character of property" for purposes of whether recreational user immunity applies, the Court included a reference to the *Brinkman* case for the proposition that "even though sidewalks and streets are often used for recreational purposes, such premises are not protected by recreational user immunity because they do not have the essential character of land held open to the public for recreational use." *Id.* at ¶ 16. However, as set forth

above, in *Brinkman* an injury occurred when a child came in contact with a broken street sign that was located in a city street right-of-way that bordered land owned by the board of education. *Brinkman, supra*, at 431. Thus, the *Brinkman* case did not actually involve an accident that occurred on a roadway contained within a park district, but rather it occurred in a grassy area adjacent to both a city street and school property. Thus, because both *Brinkman* and *Pauley* are factually different from the case presently before us, we cannot conclude that the reasoning in either case directly conflicts with our reasoning.

Summary

{¶38} The evidence presented in the case sub judice demonstrates that the roadway at issue herein is completely contained within the park district, is maintained by the park district, and although it is also sometimes used by the general public for  travel, Mill Creek holds the park property open to the public for recreational purposes without a fee. Thus, we cannot conclude that the roadway, although a manmade improvement, altered the overall character of the property as a whole so as to convert the property from recreational property to non-recreational property. Furthermore, the evidence presented indicates that Farris was engaged in a recreational activity at the time he was injured, thereby meeting the definition of "recreational user" contained in R.C. 1533.18 and satisfying the requirements of R.C. 1533.181. Thus, because the character of the property is consistent with the

definition of "premises" set forth in R.C. 1533.18 and because Farris was engaged in a recreational activity and was a "recreational user" at the time of the accident, we conclude that there is no genuine issue of material fact regarding his status as a recreational user. Therefore, Mill Creek is immune from liability under the recreational user statute, or R.C. 1533.181, and the trial court erred in denying Mill Creek's motion for summary judgment based upon this theory of immunity. Accordingly, because we find merit to this assignment of error, Mill Creek's first assignment of error is sustained, the judgment of the trial court is reversed, and this matter is remanded to the trial court with instructions to issue summary judgment in favor of Mill Creek.

## ASSIGNMENT OF ERROR II

{¶39} In its second assignment of error, Mill Creek contends that the trial court incorrectly held that it was not entitled to statutory immunity pursuant to Chapter 2744 of the Ohio Revised Code. A review of the record indicates that Mill Creek raised this as an alternative argument in its motion for summary judgment and also raises it as an alternative argument on appeal. However, in light of our disposition of Mill Creek's first assignment of error, the arguments raised under this assignment of error have been rendered moot. Thus, we need not address the arguments raised under this assignment of error. *See Moskalik v. Mill Creek*

*Metroparks, supra*, at ¶ 42; *Zachel v. Mahaney, supra*, at *6; *Stone v. Northmont City Schools, supra*, at ¶ 40.

**JUDGMENT REVERSED.**


**<u>JUDGMENT ENTRY</u>**


It is ordered that the JUDGMENT BE REVERSED and costs be assessed to Appellee.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Mahoning County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J., & Hess, J.: Concur in Judgment and Opinion.

For the Court,


_____
Jason P. Smith
Presiding Judge


**NOTICE TO COUNSEL**

**This document constitutes a final judgment entry.**